CONFEDERATED TRIBES OF COOS, LOWER UMPQUA & SIUSLAW INDIANS, Plaintiff,

v.

Bruce H. BABBITT Secretary United States Department of the Interior,

and

Kevin Gover, Assistant Secretary for Indian Affairs United States Department of the Interior, Defendants.

No. Civ.A. 99–2517(JHG).

United States District Court, District of Columbia.

Sept. 29, 2000.

---

**156**

Dennis Jeffrey Whittlesey, Thad Stevenson Huffman, John K. McDonald, Jackson & Kelly, PLLC, Washington, DC, for Confederated Tribes of Coos, Lower Umpqua & Siuslaw Indians, Plaintiff.

Silvia Sepulveda–Hambor, U.S. Dept. of Justice, Washington, DC, for Bruce H. Babbitt and Kevin Gover, Defendants.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiff Confederated Tribes of Coos, Lower Umpqua & Siuslaw Indians ("Confederated Tribes") is an Indian tribe headquartered in Coos Bay, Oregon, with a governing body duly recognized by the Secretary of the Interior. The plaintiff asserts that the Secretary of the Interior improperly denied its request for certification of a particular parcel of land, known as the Hatch Tract, for casino gaming. The plaintiff asserts several claims against the defendants, the Secretary, United States Department of the Interior, and the Assistant Secretary for Indian Affairs, United States Department of the Interior, for violating the Administrative Procedure Act, 5 U.S.C. §§ 500–706, and seeking declaratory relief, 28 U.S.C. § 2201, and an injunction, 28 U.S.C. § 2202. Both parties have filed motions for summary judgment.[1] The Court finds that the defendants applied an unduly narrow interpretation in refusing to certify the Hatch Tract for gaming. This case will be remanded to the defendants for further consideration in light of this opinion. Accordingly, the plaintiff's motion for summary judgment is moot, and the defendants' motion for summary judgment is moot.

### I. Background

The Confederated Tribes had its status as a recognized Indian tribe federally terminated by the Indians of West Oregon Termination Act of August 13, 1954, 25

---

**1.** This opinion also resolves the plaintiff's motion to compel filing of a supplement to the administrative record.

U.S.C. §§ 691 *et seq.* (1998). (Administrative Record ("A.R.") 00002.) The Confederated Tribes' status as a recognized Indian tribe was federally restored by the Confederated Tribes of Coos, Lower Umpqua & Siuslaw Indians Restoration Act of October 17, 1984 ("Restoration Act"), 25 U.S.C. § 714 *et seq.* (1998).

Prior to March 2, 1998, the Confederated Tribes acquired title to certain land in Lane County, Oregon, which is commonly known as the "Hatch Tract."[2] Prior to March 2, 1998, the Confederated Tribes formally requested the United States Department of the Interior to take the Hatch Tract into trust. By letter dated March 2, 1998, the Department of the Interior formally advised the Confederated Tribes that the Hatch Tract had officially been taken into trust. (A.R.00001.)

Prior to October 14, 1998, the Confederated Tribes acquired title to certain land in Lane County, Oregon, which is commonly known as the "Peterman Tract."[3] By the Technical Corrections Act of October 14, 1998, Congress amended the Restoration Act to make the Peterman Tract part of the Confederated Tribes' reservation. 25 U.S.C. § 714e(b) (1998). The Hatch Tract and the Peterman Tract are contiguous parcels of land. (A.R.00003.)

This dispute began when the Confederated Tribes requested the Department of the Interior ("DOI") to qualify the Hatch Tract as exempt from the general prohibition against gaming on land acquired into trust after October 17, 1988, under section 2719 of the Indian Gaming Regulatory Act. 25 U.S.C. § 2719 (1998).

The Indian Gaming Regulatory Act ("IGRA") established a comprehensive scheme for the regulation of gaming activi-

ties on Indian land. Among other things, section 2719 of the IGRA prohibits gaming "conducted on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988...." *Id.* § 2719(a). The general prohibition of gaming on lands acquired post-October 17, 1988 is subject to several exceptions. Two of these exceptions are at the core of this dispute.

Under section 2719(a)(1), Indian lands are exempt from the general prohibition of gaming if "such lands are within or contiguous to the boundaries of the reservation of the Indian tribe on October 17, 1988...." 25 U.S.C. § 2719(a)(1) (1998).

Under section 2719(b)(1)(B)(iii), Indian lands are exempt from the general prohibition if such "lands are taken into trust as part of ... the restoration of lands for an Indian tribe that is restored to Federal recognition." 25 U.S.C. § 2719(b)(1)(B)(iii) (1998).

The Confederated Tribes argued to the DOI that the Hatch Tract was not subject to the prohibition on gaming because the land was taken into trust as part of the restoration of lands for an Indian tribe that is restored to Federal recognition, see id. § 2719(b)(1)(B)(iii), or,. alternatively, was contiguous to the boundaries of the reservation on October 17, 1988, see id. § 2719(a)(1).

By letter dated October 21, 1999, the Assistant Secretary of Indian Affairs, defendant Kevin Gover, advised The Honorable Dick Clarkson, Tribal Council Chairman, Confederated Tribes of Coos, Lower Umpqua & Siuslaw Indians that the Hatch Tract did not qualify for an exemption under Section 20 of the IGRA prohibiting

---

**2.** The Hatch Tract is formally described as portions of Government Lots 1 and 2 in Section 25 and portions of the E1/2NE1/4 and Lot 1 in Section 26, Township 18 South, Range 12 West, Willamette Meridian, containing 98.165 acres, more or less. (A.R.00037–61.)

**3.** The Peterman Tract is formally described as a parcel beginning at the common·corner to

Sections 23, 24, 25, and 26, Township 18 South, Range 12 West, Willamette Meridian; then west 25 links: then north 2 chains and 50 links; then east 25 links to a point on the sectionline between Sections 23 and 24; then south 2 chains and 50 links to the place of origin, and containing 0.062 of an acre, more or less, situated and lying in Section 23, Township 18 South, Range 12 West, Willamette Meridian. (A.R.00095–99.)

gaming on lands acquired into trust after October 17, 1988. (A.R.00001.)

The opinion of the Office of the Solicitor, United States Department of the Interior, which was attached to and referenced in the Assistant Secretary's letter, determined that the Hatch Tract did not qualify for the section 2719(b)(1)(B)(iii) exception because the exception covered "only those lands that are available to a restored tribe as part of its restoration to federal recognition. The statute that restores the Tribe's Federal recognition status must also provide for the restoration of land, and the particular parcel in question must fall within the terms of the land restoration provision." (A.R.00004.) The Solicitor further found, and the Confederated Tribes do not dispute, that the Confederated Tribes were restored to federal recognition through the Restoration Act, see Pub.L. No. 98–481, 98 Stat. 2250, *codified at* 25 U.S.C. § 714 *et seq.* (1998). (A.R. 00002.) The Solicitor's opinion noted that section 7 of the Restoration Act states "the Secretary shall accept the following lands in trust for the tribe as a reservation" and lists two parcels of land in Coos County, Oregon, and one parcel in Curry County, Oregon. 98 Stat. at 2253, 25 U.S.C. § 714a–714e (1998). It is undisputed that the Hatch Tract is not one of the listed parcels.

The Assistant Secretary also determined that the Hatch Tract did not qualify for the exception contained in section 2719(a)(1). (A.R.00001.) The Solicitor's opinion stated that the 1998 legislation, Pub.L. No. 105–256, that amended the Restoration Act to add the Peterman Tract to the tribes' reservation did not retroactively create a reservation on October 17, 1984—the date of the initial restoration. *See id.* § 5. (A.R.00003.) Consequently, the Hatch Tract was not contiguous to the tribes' reservation on October 17, 1988—the cut-off date. (A.R.00006.)

## II. Standard of Review

■ Under the Administrative Procedure Act, courts must set aside agency action found to be "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (1998). Under this standard, a court's review of a challenged agency decision "is to be based on the full administrative record that was before the [agency] at the time [it] made its decision." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

■ In all its actions, an agency is constrained by the statutory authority given by Congress. The appropriate framework for analysis in this case is *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under *Chevron,* "judicial review of an agency's interpretation of a statute under its administration is limited to a two-step inquiry." *Nuclear Information Resource Service v. N.R.C.,* 969 F.2d 1169, 1173 (D.C.Cir.1992) (en banc). "In the first step, the court analyzes whether it may, 'employing traditional tools of statutory construction,' clearly ascertain how Congress intended the statute to apply to the facts before the tribunal." *Com. of Massachusetts v. U.S. Dept. of Transp.,* 93 F.3d 890, 893 (D.C.Cir.1996) (quoting *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. 2778). If the court can ascertain a clear intent, it should reject contrary agency interpretations. *See Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. 2778. However, if the intent of Congress is ambiguous, courts do not impose their own construction of the statute, "but instead examine only whether 'the agency's answer is based on a permissible construction of the statute.' " *North Broward Hospital District v. Shalala,* 172 F.3d 90, 93 (D.C.Cir.1999) (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778).

■ Complicating the matter is a traditional presumption applicable in Native American law—that "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Muscogee (Creek) Nation v. Hodel,* 851 F.2d 1439, 1444–45 (D.C.Cir. 1988) (quoting *Montana v. Blackfeet Tribe,*

471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985)). As a result of this presumption, the D.C. Circuit has previously rejected agency interpretations because the interpretation did not favor the Indians. *Id.*, 851 F.2d at 1445–46; *Massachusetts*, 93 F.3d at 892 ("Of course, what may be thought ambiguous in the first step of Chevron (and thus what may define a reasonable interpretation in step two) depends on the issue in question ... [T]raditional presumptions about the parties or the topic in dispute may limit the breadth of ambiguity and thus affect both the first and second steps of *Chevron* " (citations omitted)); *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49 (D.C.Cir.1991); *Vargas v. INS*, 938 F.2d 358, 363 (2d. Cir.1991) (*Chevron* must yield to principle of lenity in construing deportation statute); *Mojica v. Reno*, 970 F.Supp. 130 (E.D.N.Y.1997) ("[W]hen an agency's interpretation conflicts with an established rule of statutory construction with substantive overtones, courts have given precedence to the rule of statutory construction"). Of course, as is also the case when applying the first step of *Chevron,* the ambiguity must be bona fide in order for the presumption to apply.

■ In identifying ambiguity, the Court must look at the whole statutory scheme, not merely the particular provision at issue. *See FDA v. Brown & Williamson*, 529 U.S. 120, 120 S.Ct. 1291, 1294, 146 L.Ed.2d 121 ("In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning—or ambiguity—of certain words or phrases may only become evident when placed in context."); *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) (stating that it is a "fundamental canon of statutory construction that the words of the statute must be read in their context and with a view to their place in the overall statutory scheme"); and *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 569, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (stating that a court should interpret a statute "as a symmetrical and coherent regulatory scheme").

## III.   Discussion

Plaintiffs filed this lawsuit seeking judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500–706, and a declaratory judgment under 28 U.S.C. §§ 2201, 2202.

Before this Court are the plaintiff's motion for summary judgment, and the defendants' cross-motion for summary judgment. The plaintiff's motion for summary judgment contains four asserted bases: (1) the Hatch Tract qualifies for gaming under section 2719(a)(1); (2) the Hatch Tract qualifies for gaming under section 2719(b)(1)(B)(iii); (3) the Assistant Secretary's decision deviated from prior agency practice without reasoned explanation; and (4) the Assistant Secretary's decision was "arbitrary and capricious" because it was made without considering certain pertinent materials.

### A.   Section 2719(a)(1)

#### 1.   The Assistant Secretary's Legal Interpretation

■ The plaintiff argues that the Hatch Tract qualifies for gaming under section 2719(a)(1), which exempts lands acquired in trust after October 17, 1988 if "such lands are located within or contiguous to the boundaries of the reservation of the Indian tribe on October 17, 1988." 25 U.S.C. § 2719(a)(1) (1998). The parties agree that the Peterman Tract is contiguous with the Hatch Tract. (A.R. 00003.) The plaintiff asserts that the section 2719(a)(1) exception is available because the Peterman Tract was part of the reservation on October 17, 1988. *Id.*

The Confederated Tribes' Restoration Act, 27 U.S.C. § 714 *et seq.*, enacted on October 17, 1984, directed the Secretary to accept specifically identified parcels of land into trust for the benefit of the tribe. *Id.*, § 714e(b). The Peterman Tract was not among the identified parcels, nor was the

Hatch Tract. On October 14, 1998, Congress amended the Restoration Act to add the Peterman Tract to the tribe's reservation. Pub.L. No. 105–256, section 5 states:

Section 7(b) of the Coos, Lower Umpqua, and Siuslaw Restoration Act (25 U.S.C. § 714e(b)) is amended by adding at the end the following:

(4) [description of the Peterman Tract]

25 U.S.C. § 714e(b)(4) (1998). The plaintiff argues that this amendment "retroactively" added the Peterman Tract to the tribe's reservation as of the date of the initial enactment of the Restoration Act, October 14, 1984. The DOI, however, in its refusal to qualify the Hatch Tract for gaming, took the position that the Peterman Tract was not part of the reservation until October 14, 1998—the date of the amendment.

An interpretation of section 2719(a)(1) starts with the language of the statute. *See American Mining Congress v. E.P.A.,* 824 F.2d 1177, 1183 (D.C.Cir.1987). The provision could not have been written more clearly. All one need do is determine the "boundaries," as established by law, of the reservation on October 17, 1988. The subsection has an obvious temporal limitation. Any land which was not "within or contiguous to the boundaries of the reservation" of the tribe on October 17, 1988 does not qualify for the exception. The Peterman Tract was simply not part of the reservation on October 17, 1988. Therefore, the Hatch Tract was not "within or contiguous to the boundaries of the reservation" on October 17, 1988.

Under the plaintiff's construction of the statute, section 2719(a)(1) would have to reference, in some way, the tribes' Restoration Act. The plaintiff's argument might have more force if section 2719(a)(1) were worded differently. If section 2719(a)(1)

stated, for instance, that "all lands described in, or contiguous to lands described in, the tribe's Restoration Act" were exempt from the prohibition on gaming, then the Hatch Tract might qualify for gaming as a result of an amendment to the Restoration Act adding the Peterman Tract. But section 2719(a)(1), as written, does not reference the Restoration Act; it references a particular point in time. There is no evidence that Congress meant for section 2719(a)(1) to depend on future Congressional action. Nor is there any evidence to support the notion that Congress intended to alter the plain meaning of section 2719(a)(1) when it amended the Confederated Tribes' Restoration Act.

The legislative history of the 1998 amendment to the Restoration Act also indicates that Congress meant to add new lands which were not previously considered part of the Confederated Tribes' reservation. The House Report states: "Section 5 would add land in Lane County, Oregon, to reservation land that is held in trust for the Confederated Tribes of Coos." H.R.Rep. 105–733, 105th Cong., 2d Sess. (1998).

The plaintiff's argument might also be more persuasive if it could be shown that Congress was merely clarifying its original intent, or correcting a technical defect, when it amended the Restoration Act to include the Peterman Tract.[4] If Congress had always intended for the Peterman Tract to be part of the reservation, and the 1998 amendment merely corrected a technical defect in a statute, or added "clarifying language" which did not change the substantive impact of the statute, the amendment might be found to "relate back" to the enactment of the substantive legislation. *See Whalen v. United States,*

---

**4.** In fact, in the amendment that added the Peterman Tract to the reservation, Congress did correct some technical errors. These corrections might "relate back" to the substantive enactment, but as the legislative history makes clear, the addition of the Peterman Tract was not such a correction: "In addition to those technical corrections relating to typo-graphical errors in existing law are provisions which ... add 0.062 acres of land, the driveway to an Indian cemetery, to the Coos, Lower Umpqua, and Siuslaw Tribal Reservation." H.R.Rep. 105–733, 105th Cong., 2nd Sess. 1998. *The referenced driveway is the Peterman Tract.*

826 F.2d 668 (7th Cir.1987) (finding amendment to federal estate tax was merely clarifying; application to appellant did not therefore violate due process); and *In re Chateaugay Corp.*, 89 F.3d 942 (2nd Cir.1996). But it is clear that, in amending the Confederated Tribes' Restoration Act, Congress had no such intent. The amendment that added the Peterman Tract to the reservation is just that—a substantive amendment.

Finally, there is no indication that Congress intended the amendment adding the Peterman Tract to retroactively create the legal fiction that the Peterman Tract was part of the reservation as of the date of the Restoration Act. *See Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (finding that absent clear Congressional intention, statutes are presumed to operate prospectively). Therefore, the Peterman Tract was not part of the reservation, and the Hatch Tract was not "within or contiguous to the boundaries of the reservation of the Indian tribe on October 17, 1988." 25 U.S.C. § 2719(a)(1) (1998).

### 2. Departure From Prior Agency Practice Without Reasoned Interpretation

The plaintiff also asserts that the Assistant Secretary's decision deviated from prior agency practice without reasoned explanation. *See American Telephone & Telegraph Co. v. FCC*, 974 F.2d 1351, 1354 (D.C.Cir.1992) (stating that a court "will not uphold an agency's action where it failed to offer a reasoned explanation that is supported by the record"). The plaintiff argues that the defendants certified land for gaming on behalf of the Confederated Tribes of the Grande Ronde after it was made part of that tribe's reservation by a 1994 Act of Congress which added the parcel to a reservation created prior to October 17, 1988. The plaintiff asserts that the defendants certified the land for gaming pursuant to section 2719(a)(1), but that they now refuse to do the same for them. Refusal to adequately explain this change in interpretation of section

2719(a)(1), the plaintiff asserts, is arbitrary and capricious.

The defendants argue that the agency did not act arbitrarily or capriciously because it never changed its interpretation of section 2719(a)(1). The Solicitor's opinion explained that the Grande Ronde Community land was certified for gaming under section 2719(b)(1)(B)(iii), not section 2719(a)(1). Although the plaintiff strenuously asserts that this is merely a post-hoc rationalization, they do not point to any evidence to the contrary. In fact, at times, the plaintiff appears to recognize that there is no evidence pointing to a departure from previous practice. *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion of Summary Judgment, at 2 ("This [prior] decision cannot be dated because there is no documentation that it was ever made. . . ."). More importantly, the Solicitor's opinion adequately explains the DOI's reasons for certifying the Grande Ronde land under section 2719(b)(1)(B)(iii). (A.R. at 00007–00009.) Because the plaintiff has not adduced any evidence that the agency changed its interpretation of section 2719(a)(1), the Court finds that the agency's decision was not arbitrary and capricious for failure to adequately explain its deviation from prior practice.

## B. Section 2719(b)(1)(B)(iii)

### 1. The Assistant Secretary's Legal Interpretation

Section 2719(b)(1)(B)(iii) excepts lands "taken into trust as part of—(iii) the restoration of lands for an Indian tribe that is restored to federal recognition." 25 U.S.C. § 2719(b)(1)(B)(iii) (1998). The parties agree that the Confederated Tribes is a "restored" tribe within the meaning of section 2719(b)(1)(B)(iii). "Restoration" is not defined in the statute.

■ As always, interpretation of a statute begins with its plain meaning. *American Mining Congress v. E.P.A.*, 824 F.2d

1177 (D.C.Cir.1987). The dictionary defines "restore" as follows:

> **Restore**—1. To bring back into existence or use. 2. To bring back to an original state. 3. To put (someone) back in a former position. 4. To make restitution of: give back.

Webster's II New Riverside University Dictionary, p. 1002 (The Riverside Publishing Co.1994). Similarly, the word "restoration" is defined as follows:

> **Restoration**—1. An act of restoring. 2. The state of being restored.

*Id.*, p. 1002. The DOI, however, in its refusal to accept the Hatch Tract as eligible for gaming under section 2719(b)(1)(B)(iii), used a narrower construction of the statute. The Solicitor's opinion states that " 'restored lands' under [section 2719(b)(1)(B)(iii) ] include only those lands that are available to a restored tribe as part of its restoration to federal recognition." (A.R. at 00004.)

■ Under a natural (and broad) reading of the provision, restored tribes which reacquired lands previously held by the tribe would qualify for the exception. The "restoration of lands" could be construed to mean just that; the tribe would be placed back in its former position by reacquiring lands. The manner of the restoration would not matter. Under a more limited reading, only lands which were restored to the tribe as part of the act of restoring the tribe to federal recognition would qualify for the exception. Part of the ambiguity of the provision stems from the use of the phrase: "that is restored to federal recognition." 25 U.S.C. § 2719(b)(1)(B)(iii) (1998). For example, if this phrase means only that the tribe is in *the state of being restored* (noun), then the plaintiff's construction is preferred. The final clause would merely identify the tribes to which the exception was available, i.e., restored tribes. If the phrase references *the activity of restoring* (verb), then the defendants' interpretation is appropriate, because the "restoration" might be logically limited to the contemporaneous act of restoring to federal recognition.

The varying possibilities highlight the ambiguity of section 2719(b)(1)(B)(iii).

In defending their position before this court, the defendants argue that the plain meaning of the term "restoration" is inconsistent with the structure and text of section 2719(b)(1)(B)(iii). Of course, this argument rests on "the fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. U.S.*, 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993). In support of their argument, the defendants cite numerous uses of the term "restore" and its variations in Acts of Congress regarding the restoration of recognition to Indian tribes. *See* Pub.L. 99–398, August 27, 1986, 25 U.S.C. §§ 566–566h (restoring federal recognition to the Klamath Tribe and restoring rights and privileges to the tribe and its members); Pub.L. 97–391, December 29, 1982, 25 U.S.C. §§ 712–712e (extending federal recognition to the Cow Creek Band of Umpqua Tribe of Oregon and restoring rights and privileges to the tribe and its members); Pub.L. 98–165. November 22, 1983, 25 U.S.C. §§ 713–713e (extending federal recognition to the Grande Ronde Community of Oregon and restoring rights and privileges to the tribe and its members); Pub.L. 90–481, October 17, 1984, 25 U.S.C. §§ 714–714f (extending federal recognition to the plaintiff, the Confederated Tribes of Coos, Lower Umpqua, and Siuslaw Indians, and restoring rights and privileges to the tribe and its members); Pub.L. 101–42, June 29, 1989, 25 U.S.C. §§ 715–715g (extending federal recognition to the Coquille Indian Tribe of Oregon and restoring rights and privileges to the tribe and its members); Pub.L. 100–89, August 18, 1987, 25 U.S.C. §§ 731–737 (restoring federal recognition to the Alabama and Coushatta Indian Tribes of Texas and restoring rights and privileges to the tribe and its members); Pub.L. 103–116, October 27, 1993, 25 U.S.C. §§ 941–941n (restoring federal recognition to the

Catawba Indian Tribe of South Carolina and restoring rights and privileges to the tribe and its members); Pub.L. 191–484, October 31, 1990, 25 U.S.C. §§ 983–983h (extending federal recognition to the Ponca Tribe of Nebraska and restoring rights and privileges to the tribe and its members); and Pub.L. 100–89, August 18, 1987, 25 U.S.C. §§ 1300g–1300g–7 (restoring federal recognition to the Ysleta del Sur Pueblo and restoring rights and privileges to the tribe and its members). The defendants say that the Congressional use of the word "restore" has come to have special meaning—that "restoration of lands" means only restoration of lands by Congress contemporaneous with the restoration of federal recognition, or in some other way connected to the Congressional act of restoration. In short, the defendant seek to graft a procedural and temporal limitation onto section 2719(b)(1)(B)(iii).

This claimed limitation stems, of course, from the event of restoration of federal recognition. *See* Pub.L. No. 98–481, 25 U.S.C. §§ 714 *et seq.* (1998). But, in the Confederated Tribes' Restoration Act and the various other restoration Acts cited by the defendants, the word "restore" is used in its ordinary sense; it has no special meaning. And section 2719(b)(1)(B)(iii) contains no clear limitation to the event of restoration to federal recognition. The defendants' "special meaning" argument seems to proceed, not from the special meaning Congress gave to the word "restoration" (because it did not), but merely from the fact that Congress used the word at all. Such prior use is not enough to overcome the plain meaning of the word "restoration," particularly in light of the rule of liberal construction favoring Indians.

In addition, Congress has used the word "restore" in a context other than the process of restoring a tribe to federal recognition. 25 U.S.C. § 463 states: "The Secretary of the Interior ... is hereby authorized to *restore* to tribal ownership the remaining surplus lands of any Indian reservation opened, or authorized to be opened, to sale...." 25 U.S.C. § 463

(1998) (emphasis added). The use of the word "restore" in this setting undercuts the defendants' assertion that the restoration of lands must be tied to the "statute that restores the Tribe's Federal recognition status ..." *See* Opinion of the Office of the Solicitor, United States Department of the Interior, dated October 19, 1999, p. 1; (A.R.00002.)

Finally, Congress has sometimes chosen to use words other than "restore" in the course of its actions to restore recognition to previously recognized tribes. As Judge Hillman observed in *Grand Traverse Band of Ottawa and Chippewa Indians v. U.S. Atty. for Western Dist. of Mich.*, 46 F.Supp.2d 689 (W.D.Mich.1999):

> Congress itself has used the words "restore" and "restoration" interchangeably with "reaffirm" and "recognize" in the course of its actions to restore recognition of previously recognized tribes. The government has pointed to no standard, accepted and exclusive Congressional use of the words "restore" and "restoration."
>
> Instead, Congressional use of the words appears to have occurred in a descriptive sense only, in conjunction with action taken by Congress to accomplish a purpose consistent with the ordinary meaning of the words. In no sense has a proprietary use of "restore" or "restoration" been shown to have occurred.

*Id.* at 698 (citations omitted).

The defendants also argue that the plain meaning of the word "restoration" would subvert the structure of the other express limited exceptions in section 2719, and they point specifically to section 2719(b)(1)(B)(ii) and section 2719(a)(2)(B). With respect to section 2719(b)(1)(B)(ii), the defendants assert that the "initial reservation" limit would be nullified. The Court is not persuaded that the limited exception contained in section 2719(b)(1)(B)(ii) would be nullified by giving section 2719(b)(1)(B)(iii) its natural meaning. Not all tribes acknowledged un-

der the federal acknowledgment process could be considered "restored to federal recognition."[5] *See Grand Traverse*, 46 F.Supp.2d at 699. Thus, although there might be some overlap, section 2719(b)(1)(B)(ii) would continue to have independent bite. The same is true of section 2719(a)(2)(B), which is limited to the tribe's "last recognized reservation"; the exception would continue to have independent bite for tribes that could not be considered "restored to federal recognition."

Finally, the defendants argue that giving the word "restoration" its plain meaning would result in preferred status for restored tribes vis-a-vis continuously recognized tribes. Under the plaintiff's interpretation, the defendants assert, any and all lands taken into trust for restored tribes would be eligible for gaming, thus resulting in preferred status for restored tribes. The Court disagrees. For example, *continuously recognized tribes get the benefit of section 2719(a)(1)*, while many restored tribes do not. "Tribes which are belatedly recognized or acknowledged . . . have not had the ability to have lands placed in trust by the Secretary for the purpose of establishing or preserving a reservation. As a result, the statute appears to allow belatedly recognized tribes to have lands exempted by way of certain other exceptions." *Grand Traverse*, 46 F.Supp.2d at 698. Although an expansive interpretation of section 2719(b)(1)(B)(iii) would obviously benefit restored tribes vis-a-vis other tribes, it is not incompatible with the Congressional intent to provide an exception for restored tribes. The plaintiff's interpretation is not so unreasonable as to require the Court to resolve the ambiguity in favor of the government.

The term "restoration" can be limited to avoid the result contemplated by the defendants—that any and all property acquired by restored tribes would be eligible

for gaming. The Court agrees with Judge Hillman that "the term 'restoration' may be read in numerous ways to place belatedly restored tribes in a comparable position to earlier recognized tribes while simultaneously limiting after-acquired property in some fashion." *Id.* at 700. As Judge Hillman points out, "land that could be considered part of such restoration might appropriately be limited by the factual circumstances of the acquisition, the location of the acquisition, or the temporal relationship of the acquisition to the restoration." *Id.* This Court also agrees that "[p]lacement within a prior reservation of the [tribe] is significant evidence that the land may be considered in some sense restored." *Id.* at 702.

After considering the plain meaning of the statute, the statutory context, and the principle of liberal construction in favor of Indians, the Court finds that the defendants used an unduly restrictive analysis in determining that the Hatch Tract was ineligible for gaming. Because the Assistant Secretary did not consider all matters which might entitle the plaintiff to an exception pursuant to section 2719(b)(1)(B)(iii), and failed to adequately consider the principle of liberal construction in favor of Indians, the Court will not address whether the plaintiff is entitled to the exception, but will remand so the agency may make its full determination in light of this opinion.

### 2. Failure to Consider Pertinent Materials

In addition to attacking the defendants' legal conclusions, the plaintiff asserts that the defendants' actions were arbitrary and capricious because the Assistant Secretary's decision was made without considering pertinent materials regarding the Hatch Tract.

---

**5.** The Court notes that she is not making any determination with respect to which tribes would qualify as "restored to Federal recognition," 25 U.S.C. § 2719(b)(1)(B)(iii). That phrase may imply a different limit than the word "restoration." The Confederated Tribes

have been "restored to Federal recognition" under any definition of the phrase. *See Grand Traverse Band of Ottawa and Chippewa Indians v. U.S. Atty. for Western Dist. of Mich.*, 46 F.Supp.2d 689 (W.D.Mich.1999) (Hillman, S.J.)

The plaintiff argues that the Assistant Secretary should have considered certain materials in deciding whether the Hatch Tract qualified for gaming. According to the plaintiff, the Assistant Secretary failed to evaluate various materials submitted to the Bureau of Indian Affairs Portland Area Office by the Confederated Tribes, and a memorandum by the Portland Area Director to the Assistant Secretary recommending a determination that the Hatch Tract fit within the section 2719(b)(1)(B)(iii) exception for restored lands. The materials submitted by the Confederated Tribes to the Portland Area Office contained information regarding the Confederated Tribes' historic and cultural connection to the Hatch Tract.

The agency's reasoning for not considering the referenced materials is abundantly clear from the Solicitor's opinion: the Assistant Secretary did not consider the materials because, given the Solicitor's interpretation of section 2719(b)(1)(B)(iii), the historic and cultural connection of the tribe to the Hatch Tract was not relevant. The Solicitor's opinion states: "Assuming all of this information is true, it is our opinion that the Hatch Tract is not 'restored land' for purposes of the IGRA." (A.R.00004.) Although the agency did not consider other possible interpretations, it was not arbitrary and capricious to not consider materials which, under the interpretation being employed, were irrelevant. Thus, as an independent basis for attacking the Assistant Secretary's decision, the plaintiff's argument must fail.[6] Although not directing the defendants to do so, the Court suggests that the materials should be considered in light of today's opinion and, if they are so considered, made part of the Administrative Record. In short, the Court holds only that the DOI must revisit its original determination that the plaintiff is not entitled to an exception under section 2719(b)(1)(B)(iii) in light of this opinion.

## IV. Conclusion

In determining whether the Hatch Tract qualified for gaming, the defendants' applied an overly narrow interpretation of section 2719(b)(1)(B)(iii). The defendants' interpretation of section 2719(a)(1) was correct.

In accordance with the foregoing, it is

**ORDERED** that the plaintiff's motion for summary judgment is moot; it is

**FURTHER ORDERED** that the defendants' motion for summary judgment moot; and it is

**FURTHER ORDERED** that the matter is remanded to the defendants for further consideration in light of this opinion.

IT IS SO ORDERED.

---

**6.** The Court also has before it the plaintiff's Motion to Compel Certification and Filing of Agency's Regional Office Records as Part of the Administrative Record. The Court denies this motion. The Solicitor's opinion assumed the truthfulness of much of the information that is the subject of the motion, but did not consider it in light of a legal interpretation that made it irrelevant. (A.R.00004.) Other portions of the information were items submitted to the DOI in the context of another proceeding. In short, there is no reasonable basis to believe that the information subject to the motion was considered by the Assistant Director, or was relevant or adverse to the agency's decision making process. *See James Madison Ltd. v. Ludwig,* 82 F.3d 1085, 1095 (D.C.Cir.1996) (rejecting claim that bank files not before the decision maker should have been made part of the administrative record); *Public Citizen v. Heckler,* 653 F.Supp. 1229, 1237 (D.D.C.1986) (finding that relevant and adverse documents considered by the agency were properly made part of the administrative record).