# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-2898

_____

City of Council Bluffs, Iowa,

*Plaintiff - Appellant,*

State of Iowa; State of Nebraska,

*Intervenor Plaintiffs - Appellants,*

v.

United States Department of the Interior; Deb Haaland, in her official capacity as Secretary of the United States Department of Interior; National Indian Gaming Commission; E. Sequoyah Simermeyer, in his official capacity as Chairman of the National Indian Gaming Commission,[1]

*Defendants - Appellees.*

------------------------------

Ponca Tribe of Nebraska,

*Amicus on Behalf of Appellee(s).*

_____

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs

_____

---

[1]Secretary Haaland and Chairman Simermeyer are automatically substituted for their predecessors under Federal Rule of Appellate Procedure 43(c)(2).

Submitted: April 13, 2021
Filed: August 30, 2021

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

In 2017, the National Indian Gaming Commission determined that a parcel of land in Iowa that is held in trust by the United States for the Ponca Tribe of Nebraska is eligible for gaming. The Commission reasoned that the land is eligible as part of "the restoration of lands for an Indian tribe that is restored to Federal recognition." 25 U.S.C. § 2719(b)(1)(B)(iii). The appellants here, the States of Iowa and Nebraska and the City of Council Bluffs, challenged that decision in the district court. The district court[2] agreed with the Commission that the Ponca Restoration Act, Pub. L. No. 101-484, 104 Stat. 1167 (1990), does not preclude gaming on the parcel. But because the Commission failed to consider a relevant factor in evaluating whether the parcel is restored land for the Tribe, the court remanded the matter for further consideration. The appellants noticed an appeal, arguing that the court erred in its interpretation of the Ponca Restoration Act. We affirm the district court's order.

I.

Congress enacted the Indian Gaming Regulatory Act in 1988 to regulate gaming by Indian tribes on Indian lands. 25 U.S.C. § 2702. The term "Indian lands" includes "any lands title to which is . . . held in trust by the United States for the benefit of any Indian tribe." _Id._ § 2703(4)(B). Gaming regulated by this statute is

_____

[2]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

generally prohibited on land acquired in trust by the Secretary of the Interior for the benefit of an Indian tribe after October 17, 1988. *Id.* § 2719(a). But the so-called restored lands exception states that this prohibition does not apply when such "lands are taken into trust as part of . . . the restoration of lands for an Indian tribe that is restored to Federal recognition." *Id.* § 2719(b)(1)(B)(iii).

This long-running dispute concerns whether the restored lands exception applies to a parcel of land in Carter Lake, Iowa, owned by the Ponca Tribe of Nebraska. The Tribe was restored to federal recognition in 1990. The Ponca Restoration Act states that the Secretary of the Interior "shall accept not more than 1,500 acres of any real property located in Knox or Boyd Counties, Nebraska, that is transferred to the Secretary for the benefit of the Tribe," and that the Secretary may accept additional land in Knox or Boyd Counties pursuant to his authority under the Indian Reorganization Act. Pub. L. No. 101-484, § 4(c), 104 Stat. 1167, 1167-68 (1990). The Restoration Act adds that "[a]ll Federal laws of general application to Indians and Indian tribes," including the Indian Reorganization Act, "shall apply with respect to the Tribe and to the members." *Id.* § 3, 104 Stat. at 1167. The Indian Reorganization Act, in turn, authorizes the Secretary, "in his discretion, to acquire . . . any interest in lands . . . for the purpose of providing land for Indians." 25 U.S.C. § 5108. Some lands acquired under the Indian Reorganization Act may be taken into trust as part of the restoration of lands for a tribe. *See id.* §§ 2703(4)(B), 2719(b)(1)(B)(iii).

In 1999, the Tribe purchased a 4.8-acre parcel in Carter Lake, which is located in Pottawattamie County, Iowa. The following year, the Tribe requested that the Bureau of Indian Affairs take the land into trust for the benefit of the Tribe, stating that the property would be used "to provide services to our tribal members, primarily health services." The State of Iowa, fearing that the Tribe intended to use the parcel for gaming, opposed the trust acquisition. The State eventually agreed to forgo litigation over the trust acquisition; the State later maintained that counsel for the

Tribe had agreed in exchange that the Carter Lake parcel was not eligible for gaming under the restored lands exception. The Bureau of Indian Affairs, acting pursuant to its authority under the Indian Reorganization Act, completed the trust acquisition in 2003.

In 2007, the Tribe requested that the Chairman of the National Indian Gaming Commission approve an ordinance to allow gaming on the parcel. *See* 25 U.S.C. § 2710(b)(1). The Tribe maintained that the land was eligible for gaming after all under the restored lands exception. The Chairman disapproved the gaming ordinance, and the Tribe appealed to the full Commission. In December 2007, the Commission reversed the Chairman's decision, concluding that the Carter Lake parcel qualified as land taken into trust as part of "the restoration of lands for an Indian tribe that is restored to Federal recognition." *See* 25 U.S.C. § 2719(b)(1)(B)(iii). The Commission applied a common-law test requiring consideration of (1) the temporal proximity of the trust acquisition to a tribe's restoration, (2) whether the tribe has a historical and modern nexus to the location, and (3) the factual circumstances of the trust acquisition.

The appellants sought judicial review. The district court concluded that the Commission's restored lands decision was arbitrary and capricious, and entered a declaratory judgment reversing the decision. The Department of the Interior and the Commission appealed. On appeal, they conceded that the Commission improperly failed to consider the alleged 2002 agreement between Iowa and the Tribe as a factor in its restored lands analysis. *Nebraska ex rel. Bruning v. U.S. Dep't of Interior*, 625 F.3d 501, 504, 509 (8th Cir. 2010). This court ordered a remand to the Commission to consider the validity and legal effect of that agreement and, if necessary, to reexamine whether the parcel is eligible for gaming under the restored lands exception. *Id.* at 511-12. We declined then to address whether the Ponca Restoration Act limits restored lands for the Tribe to land in Knox and Boyd Counties, Nebraska. *Id.* at 512-13.

-4-

In 2017, the Commission affirmed its decision that the Carter Lake parcel is restored land. The Commission first concluded that the purported 2002 agreement between Iowa and the Tribe was not valid, and thus did not estop the Tribe from invoking the exception. The decision next adopted an interpretation letter from the Solicitor of the Department of the Interior concluding that the Ponca Restoration Act does not limit the Tribe's restored lands to Knox and Boyd Counties, Nebraska. The Commission then concluded that the parcel qualified as restored land under the common-law test.

The appellants again sought judicial review under the Administrative Procedure Act. *See* 5 U.S.C. § 702. They requested a declaratory judgment that the Carter Lake parcel is not eligible for gaming under the restored lands exception, and that the Commission's restored lands analysis was arbitrary and capricious. The district court granted in part and denied in part the appellants' motion for summary judgment. The court concluded that the Ponca Restoration Act does not preclude gaming on the Carter Lake parcel. But because the Commission failed to consider the 2002 agreement between Iowa and the Tribe as a relevant factor in its restored lands analysis, the court remanded the matter to the Commission again for further consideration. The court later denied the appellants' motion to certify an interlocutory appeal on the question of the proper interpretation of the Ponca Restoration Act. The court believed that the summary-judgment order was "final" and therefore appealable under 28 U.S.C. § 1291 without certification as an interlocutory appeal.

The appellants filed a notice of appeal, and they renew their contention that the Ponca Restoration Act precludes gaming on the Carter Lake parcel. We review the district court's decision on this legal question *de novo*. *Thomas v. Jackson*, 581 F.3d 658, 664 (8th Cir. 2009).

II.

We must first determine whether we have appellate jurisdiction. The parties have not raised this issue, but the court has an independent "obligation to notice jurisdictional infirmities." *Arnold v. Wood*, 238 F.3d 992, 994 (8th Cir. 2001).

The courts of appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. A final decision for purposes of appellate jurisdiction "generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). This finality requirement forbids "piecemeal disposition on appeal of what for practical purposes is a single controversy." *Cobbledick v. United States*, 309 U.S. 323, 325 (1940).

As a general rule, a district court order that remands a case to a federal agency for further proceedings is not a final decision within the meaning of 28 U.S.C. § 1291. *See Borntrager v. Cent. States, Se. & Sw. Areas Pension Fund*, 425 F.3d 1087, 1091 (8th Cir. 2005). We have recognized limited exceptions. An order remanding to an agency merely for "ministerial proceedings" may be considered final. *Davies v. Johanns*, 477 F.3d 968, 971 (8th Cir. 2007). And if "an order remanding a case for further administrative proceedings will likely escape appellate review unless subject to immediate appeal, the order may be considered final." *Id.* This latter exception applies only if "an agency seeks to appeal a remand order." *Izaak Walton League of Am., Inc. v. Kimbell*, 558 F.3d 751, 763 (8th Cir. 2009).

This case does not fall within these recognized exceptions to the general rule. The remand called for "further consideration" of the "facts and circumstances surrounding" the 2002 agreement between Iowa and the Tribe as part of the Commission's restored lands analysis. By the federal defendants' admission, the events surrounding that 2002 agreement were crucial to the government's trust

acquisition of the Carter Lake parcel. The remand required the Commission to reevaluate an important legal question, and not simply to complete a ministerial task such as calculating a partial tax refund. *See Goodwin v. United States*, 67 F.3d 149, 151 (8th Cir. 1995). And the federal agencies are not appealing to litigate an issue that would otherwise escape review.

In denying the appellants' motion to certify an interlocutory appeal under 28 U.S.C. § 1292(b), the district court likened this case to *Sisseton-Wahpeton Oyate of Lake Traverse Reservation v. United States Corps of Engineers*, 888 F.3d 906 (8th Cir. 2018). There, an Indian Tribe alleged that the Corps of Engineers violated the Administrative Procedure Act, the Clean Water Act, and the National Historic Preservation Act in issuing six permit and exemption determinations allowing a landowner to construct a road on wetlands adjacent to a lake. *Id.* at 909. The Tribe asserted ten claims against the Corps and asked the district court to order the road's removal and enjoin the Corps from allowing further construction. *Id.* at 912.

The district court dismissed the Tribe's claims, with one exception. *Id.* at 909. The court agreed with the Tribe that the Corps failed to consider the requirements of the National Historic Preservation Act in issuing a 2009 permit determination, and remanded the issue to the Corps for further consideration. *Id.* at 914, 921. The Tribe appealed, and this court concluded that there was jurisdiction to consider the dismissal of the Tribe's Clean Water Act claim regarding the 2009 permit determination. *Id.* at 909-10, 914, 919-20. While acknowledging that a remand order is not final where the district court neither granted nor denied the ultimate relief sought by the plaintiff, *Giordano v. Roudebush*, 565 F.2d 1015, 1017 (8th Cir. 1977) (per curiam), this court reasoned that the district court had "denied all relief requested by the Tribe except with regard to whether the 2009 permit violated the [National Historic Preservation Act], which was remanded for the Corps to determine." *Sisseton-Wahpeton*, 888 F.3d at 920. Because the district court "explicitly denied" the Tribe's request for relief under the Clean Water Act, and did not retain

jurisdiction for further proceedings on that claim, this court exercised jurisdiction to address the Tribe's Clean Water Act claim. *Id.* at 920-21.

The district court understandably thought the present case bears "a striking resemblance to *Sisseton-Wahpeton*," but that decision pressed the outer boundaries of finality, and there is a distinguishing feature between the cases. Here, the district court "remanded the case for further administrative proceedings" and "neither granted nor denied the ultimate relief . . . sought by the plaintiff[s]" on any claim. *Giordano*, 565 F.2d at 1017. The appellants set forth just one claim for relief, asking the court to reverse the Commission's determination that the Carter Lake parcel is restored land. The court did not finally deny that ultimate relief. In fact, the court concluded that the Commission's restored lands analysis was arbitrary and capricious, and directed the Commission to consider further whether the parcel was restored land.

On appeal, the parties ask us to decide whether the Ponca Restoration Act prevents the agency from treating the Carter Lake parcel as restored land. The remand order directed the Commission to reevaluate whether the parcel is restored land. The same issue of the parcel's status as restored land is implicated both on remand to the agency and on this appeal. By contrast, the remand in *Sisseton-Wahpeton* concerned a claim under the National Historic Preservation Act that was separate from the claim under the Clean Water Act over which this court exercised appellate jurisdiction. 888 F.3d at 912, 919-21. Because the district court in this case did not decide whether the parcel is restored land, the court's decision did not end the relevant dispute "on the merits" or leave "nothing for the court to do but execute the judgment." *Catlin*, 324 U.S. at 233. Therefore, we conclude that the decision is not final within the meaning of 28 U.S.C. § 1291.

Even so, we do not believe that dismissal is required, because the district court plainly indicated that a prompt appeal was warranted, and we construe its order as an implied statement that immediate appeal on a controlling question of law would

-8-

advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). The appellants moved to certify for interlocutory appeal the order on whether the Ponca Restoration Act restricts the Tribe's restored lands to land in Knox and Boyd Counties. The court denied the motion, but only because it believed the summary-judgment order was final and "thus ineligible for interlocutory appeal." In its post-judgment order, the district court said that the appellants "asserted many compelling arguments as to why the Court should certify" the order for interlocutory appeal, including that a decision in favor of the appellants would "all but conclusively resolve the case." And the court suggested that it was "more sensible" for the appellants "to pursue an appeal now, rather than wait until after" the court conducted further proceedings with respect to the Commission's decision on remand.

A district court may certify a question for interlocutory appeal by stating in writing that a nonfinal order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). We think it evident that, but for its belief that the summary-judgment order was final, the district court believed the statutory requirements for interlocutory appeal were fulfilled. A remand for reconsideration of the appellants' motion to certify inevitably would lead to a refiling of the same appeal under a different jurisdictional statute. Accordingly, in the interest of judicial economy, we will treat the case as a proper interlocutory appeal under 28 U.S.C. § 1292(b).

### III.

The issue on appeal is whether the Ponca Restoration Act restricts land that can qualify as part of "the restoration of lands" for the Tribe to land located in Knox and Boyd Counties, Nebraska. *See* 25 U.S.C. § 2719(b)(1)(B)(iii). The Restoration Act extends federal recognition to the Tribe and provides that "[a]ll Federal laws of general application to Indians and Indian tribes," including the Indian Reorganization

Act, "shall apply with respect to the Tribe." Pub. L. No. 101-484, § 3, 104 Stat. 1167, 1167. In a section titled "Restoration of Rights," the Restoration Act mandates that the Secretary "shall accept not more than 1,500 acres of any real property located in Knox or Boyd Counties, Nebraska, that is transferred to the Secretary for the benefit of the Tribe," and permits the Secretary to "accept any additional acreage in Knox or Boyd Counties pursuant to his authority under" the Indian Reorganization Act. *Id.* § 4(c), 104 Stat. at 1167-68. Separately, the Indian Reorganization Act authorizes the Secretary, "in his discretion, to acquire . . . any interest in lands . . . for the purpose of providing land for Indians." 25 U.S.C. § 5108. The Indian Gaming Regulatory Act, in turn, allows a tribe to seek a determination from the Indian Gaming Commission that lands acquired under the Indian Reorganization Act are restored to the tribe. *Id.* §§ 2703(4)(B), 2710(b), 2719(b)(1)(B)(iii).

That Congress specified a geographic area in which the Secretary is required to accept land for the Tribe under the Ponca Restoration Act does not mean that only land within that area can be part of the restoration of lands for the Tribe. Lands expressly granted to a tribe in the tribe's restoration act may be the "paradigm" of restored lands, *see City of Roseville v. Norton*, 348 F.3d 1020, 1025 (D.C. Cir. 2003), but lands acquired for a tribe through means other than a restoration act also can qualify. *See Oregon v. Norton*, 271 F. Supp. 2d 1270, 1278-80 (D. Or. 2003); *Confederated Tribes of Coos, Lower Umpqua & Siuslaw Indians v. Babbitt*, 116 F. Supp. 2d 155, 162-64 (D.D.C. 2000).

Under the Indian Gaming Regulatory Act, the Secretary may use an established regulatory analysis to determine whether other lands acquired in trust for a tribe constitute restored lands. *See Confederated Tribes*, 116 F. Supp. 2d at 163-64; *see also* 25 C.F.R. § 292.12. Congress can specify a contrary rule by explicitly limiting the area within which a tribe can have restored lands, but it has not done so here. Instead, § 3 of the Ponca Restoration Act makes applicable to the Tribe all laws of general application to Indians and Indian tribes, including the Indian Gaming

-10-

Regulatory Act and the Indian Reorganization Act. Together, those laws operate to allow the Secretary to acquire land in trust for the Tribe outside of Knox and Boyd Counties, and to determine whether such land is restored using the established regulatory analysis. The Restoration Act provides that "[e]xcept as otherwise *specifically provided* in any other provision" of the Act, nothing in the statute "may be construed as altering . . . any rights or obligations with respect to property." Pub. L. No. 101-484, § 4(d)(1), 104 Stat. 1167, 1168 (emphasis added). There is no specific provision that alters the Tribe's right, under the Indian Gaming Regulatory Act, to seek restored land status for property outside of Knox and Boyd Counties.

Congress has shown that it knows how to limit a tribe's ability to conduct gaming on its land when it wishes to do so. After the Indian Gaming Regulatory Act went into effect, Congress amended another tribe's restoration act to mandate that the Secretary acquire land in a certain area for the tribe, but added that "[r]eal property taken into trust pursuant to this section shall not be considered to have been taken into trust for gaming (as that term is used in the Indian Gaming Regulatory Act)." Pub L. No. 105-256, § 9, 112 Stat. 1896, 1898 (1998). The Ponca Restoration Act, by contrast, contains no language limiting gaming or the "restoration of lands" for the Tribe. The better reading of Ponca Restoration Act permits the Tribe to invoke the restored lands exception for land outside of Knox and Boyd Counties.

The appellants argue that two canons of interpretation favor a contrary conclusion. They invoke the presumption that Congress is aware of existing law when it passes legislation. *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 351 (1998). Because the Indian Gaming Regulatory Act refers to "restoration of lands," they argue that Congress imported a limitation on the restoration of lands by using the title "Restoration of Rights" for the section mandating the acquisition of land in Knox or Boyd Counties. Pub. L. No. 101-484, § 4, 104 Stat. 1167, 1167-68. While a statutory title is a tool for resolving doubt about a statute's meaning, a heading "cannot substitute for the operative text of the statute." *Fla. Dep't of Revenue v.*

*Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008). The title of § 4 does not address whether the restoration of lands under that section is exclusive. Nor does the title of § 4 change the fact that § 3 provides that "[a]ll Federal laws of general application to Indians and Indian tribes," including the Indian Reorganization Act, "shall apply with respect to the Tribe." 104 Stat. at 1167. For the reasons discussed, that § 4 calls for the acquisition of restored lands in Knox and Boyd Counties does not mean that the Secretary lacks authority to restore lands elsewhere.

The appellants also invoke the canon that the expression of one thing implies the exclusion of others. *See United States v. Juan-Manuel*, 222 F.3d 480, 488 (8th Cir. 2000). They contend that because land in Knox and Boyd Counties is singled out, Congress implicitly excluded land in other counties from being "treated the same." The land in Knox and Boyd Counties, however, was singled out only for mandatory acquisition, and the parcel in Carter Lake was not treated the same in that respect. The relevant distinction is between the Secretary's duty to acquire a certain amount of land in Knox and Boyd Counties for the Tribe, and her discretion to accept other land in trust for the Tribe. Congress guaranteed a certain amount of trust land to the Tribe without otherwise infringing on the Secretary's typical discretion to accept land in trust for Indian tribes.

The appellants argue that the Department's regulations implementing the restored lands exception under the Indian Gaming Regulatory Act compel a different conclusion. *See* 25 C.F.R. § 292.11. But the question on appeal is the meaning of the Ponca Restoration Act, and the agency's interpretation of a different statute does not affect our conclusion about whether the Restoration Act precludes gaming on the parcel in Carter Lake.

The appellants acknowledged in the district court that if the Ponca Restoration Act does not exclude the Carter Lake parcel from eligibility for gaming, then "the proper resolution of this case will depend upon the outcome of the [Indian Gaming

Commission's] balancing of factors weighing in favor and against recognition of restored land status on remand." That question was to be considered by the Commission on remand from the district court, and it is not before us in this appeal.

\*　　\*　　\*

For these reasons, the district court's order of March 26, 2019, is affirmed.

_____