# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 09-1657

_____

State of Nebraska, ex rel. Jon Bruning, Attorney General of the State of Nebraska; State of Iowa, ex. rel. Thomas J. Miller, Attorney General of Iowa,

          Appellees,

City of Council Bluffs, Iowa,

          Intervenor - Appellee,

      v.

United States Department of Interior; Dirk Kempthorne, in his official capacity as Secretary of the United States Department of the Interior; National Indian Gaming Commission; Philip N. Hogen, in his official capacity as Chairman of the National Indian Gaming Commission; Cloyce V. Choney, in his official capacity as Vice Commissioner of the National Indian Gaming Commission; Norman H. Desrosiers, in his official capacity as Commissioner of the National Indian Gaming Commission,

          Appellants,

Appeal from the United States
District Court for the
Southern District of Iowa.

```
------------------------------      *
                                    *
Ponca Tribe of Nebraska,            *
                                    *
        Amicus on Behalf of         *
        Appellant.                  *
```

_____

Submitted: January 12, 2010
Filed: October 19, 2010

_____

Before SMITH and COLLOTON, Circuit Judges, and KORNMANN,[1] District
    Judge.

_____

SMITH, Circuit Judge.

The United States Department of the Interior (DOI) and National Indian Gaming Commission (NIGC) appeal from the district court's judgment reversing and vacating the NIGC's decision concluding that the Ponca Tribe of Nebraska's ("the Tribe") five-acre parcel in Carter Lake, Iowa, was eligible for gaming under the Indian Gaming Regulatory Act (IGRA) as land taken into trust as part of "the restoration of lands for an Indian tribe that is restored to Federal recognition" pursuant to 25 U.S.C. § 2719(b)(1)(B)(iii) ("the restored lands exception"). In reaching its decision, the NIGC had concluded that a purported agreement between the Tribe's attorney and the State of Iowa acknowledging that the parcel was not eligible for gaming under this provision, as documented in a notice published by the Bureau of Indian Affairs (BIA), was not a relevant factual circumstance in determining whether the restored lands exception applied. The State of Iowa, State of Nebraska, and City of Council Bluffs,

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, sitting by designation.

-2-

Iowa, (collectively, "the States") appealed to the district court, which reversed the NIGC's decision as unlawful, arbitrary, and not well-reasoned. On appeal, the DOI and NIGC argue that, once the district court corrected the NIGC's legal error by holding that the agreement and notice were relevant factual circumstances, it should have remanded the case to the NIGC to allow it to make a new decision based on all relevant factors. We now remand the case to the district court with instructions to remand to the NIGC for reconsideration of its restored lands analysis in accordance with this opinion.

## I. *Background*

On September 24, 1999, the Tribe[2] purchased in fee 4.8 acres of land in Carter Lake, Iowa ("Carter Lake land"). Thereafter, on January 10, 2000, the Tribe passed a resolution requesting that the BIA place the land into trust and stating that "[t]he property will be utilized to provide services to our tribal members, primarily health services." Three months later, the Tribe negotiated a "Cooperation and Jurisdictional Agreement" with the City of Carter Lake in which the parties agreed that it would be mutually beneficial for the Tribe to operate a medical clinic and a pharmacy on the recently purchased land.

---

[2]On September 5, 1962, Congress terminated the tribal status of the Tribe and commenced selling its reservation in Knox County, Nebraska, and its other tribal lands. But on October 31, 1990, Congress restored the Tribe's status as a federally-recognized tribe in the Ponca Restoration Act (PRA). 25 U.S.C. §§ 983–983h. Section 983b(c) of the PRA authorizes the Secretary of the DOI to place in trust up to 1500 acres of land in Knox and Boyd Counties in Nebraska.

-3-

The BIA Great Plains Regional Director ("Regional Director")[3] considered the Tribe's request to take the land into trust under the Indian Reorganization Act (IRA), 25 U.S.C. § 465, and the implementing regulations, 25 C.F.R. § 151. According to the Regional Director, the PRA "extended to the tribe and its members all federal laws of general application to Indians, including specifically . . . [the] Indian Reorganization Act (IRA)." In turn, § 5 of the IRA provides that

> [t]he Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.

25 U.S.C. § 465. Based on § 465, the Regional Director concluded that the BIA had statutory authority to accept land in trust for the Tribe's benefit. She then found that the Tribe was "in need of additional land to deliver contracted federal and tribal services to their members." According to the Regional Director, the Tribe would use the land to "provide health and pharmaceutical services to its members, and to other Indians within the Carter Lake service area of the Ponca Tribe."

On September 15, 2000, the Regional Director advised relevant state and local officials in Iowa that she "intend[ed] to accept the land into trust for the benefit of the Ponca Tribe of Nebraska." Pottawattamie County, Iowa, and the State of Iowa appealed her decision to the Interior Board of Indian Appeals (IBIA). They argued,

_____

[3]If a tribe proposes a non-gaming use, the Regional Director evaluates the request. But if the tribe proposes a gaming use, DOI policy requires the Assistant Secretary–Indian Affairs to evaluate the request. Office of Indian Gaming (OIG), *Checklist for Gaming Acquisitions, Gaming-Related Acquisitions, and IGRA Section 20 Determinations*, Sept. 2007, at 1. Because the Tribe did not propose a gaming use in its initial request, the Regional Director evaluated it.

in part, that (1) the PRA prohibited the Secretary of the DOI from taking land into trust outside of Boyd and Knox Counties and (2) the Tribe actually intended to use the land for gaming. In response, the Tribe maintained that it would only use the land for governmental and health-care services.

On August 7, 2002, the IBIA affirmed the Regional Director's decision to take the Carter Lake land into trust. In its decision, the IBIA concluded "that the plain language of the Restoration Act provides that the Secretary has the same discretionary authority to take land into trust for the Tribe that she has for any other IRA tribe." *State of Iowa & Bd. of Supervisors of Pottawattamie County, Iowa v. Great Plains Reg'l Dir., Bureau of Indian Affairs*, 38 IBIA 42, 46 (2002). Additionally, with regard to the Tribe's true intent for use of the land, the IBIA found that "[t]here is nothing other than pure speculation to suggest that the Tribe intends to use this property for gaming purposes." *Id*. at 52.

Although the State of Iowa had the right to seek judicial review of the IBIA's decision, the Tribe, the State of Iowa, and Pottawattamie County reached a purported agreement to avoid further litigation.[4] The purported agreement provided that the State of Iowa would forgo litigation in federal district court in exchange for the Tribe's agreement that the Carter Lake land would be used for governmental services and not for gaming. On November 26, 2002, Michael Mason, the Tribe's attorney, sent an email to the BIA concerning the purported agreement, which states:

> Following is the language to append to the notice of decision for the trust acquisition for the Ponca Tribe of Nebraska in Carter Lake. This was negotiated with Ass't Attorney General Jean Davis of the State of Iowa and County Attorney Richard Crowl of Pottawattamie County, Iowa.

---

[4]There is no evidence that the agreement was reduced to a writing.

-5-

"The trust acquisition of the Carter Lake lands has been made for non-gaming related purposes, as requested by the Ponca Tribe and discussed in the September 15, 2000 decision under the Regional Director's analysis of 25 CFR 151.10(c). As an acquisition occurring after October 17, 1988, any gaming or gaming-related activities on the Carter Lake lands are subject to the Two-Part Determination under 25 U.S.C. Sec. 2719. In making its request to have the Carter Lake lands taken into trust, the Ponca Tribe has acknowledged that the lands are not eligible for the exceptions under 25 U.S.C. Sec. 2719(b)(1)(B). There may be no gaming or gaming-related activities on the lands unless and until approved under the October 2001 Checklist for Gaming Acquisitions, Gaming-Related Acquisitions and Two-Part Determinations Under Section 20 of the Indian Gaming Regulatory Act has been obtained."

On behalf of the Ponca Tribe of Nebraska, I request publication of the decision to take the Tribe's Carter Lake lands in trust as soon as possible.

The IGRA, 25 U.S.C. § 2719, referenced in Mason's email, prohibits gaming on trust land acquired by an Indian tribe after October 17, 1998, unless an exception applies. One exception permits gaming under the "Two-Part Determination" procedure if "the Secretary . . . determines that a gaming establishment on newly acquired land would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community" *and* "the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination." 25 U.S.C. § 2719(b)(1)(A). Another exception—the restored lands exception—provides that the IGRA's gaming prohibition does not apply when "lands are taken into trust as part of . . . the restoration of lands for an Indian tribe that is restored to Federal recognition." *Id*. § 2719(b)(1)(B)(iii).

The BIA agreed to include in its Notice of Intent the paragraph that Mason requested. After initially not including the paragraph, the BIA published a "Corrected Notice of Intent To Take Land In Trust" ("Corrected Notice") on December 6, 2002.

-6-

The Corrected Notice included nearly verbatim the language that attorney Mason requested.

On December 13, 2002, Jean M. Davis, the State of Iowa's Assistant Attorney General, wrote Mason a letter acknowledging that the Corrected Notice contained language consistent with their agreement and thus the State would forgo its appeal of the DOI's final decision.

On January 28, 2003, the Tribe executed a deed conveying the Carter Lake land to the United States in trust for the benefit of the Tribe. The BIA completed the trust acquisition in February 2003.

On October 7, 2005, attorneys for the Tribe wrote Penny Coleman, Acting General Counsel of the NIGC, requesting that the NIGC "issue an opinion concluding that the parcel of land located in Carter Lake, Iowa, which since 2001 has been held in trust by the United States for the beneficial interest of the Tribe, constitutes both 'Indian lands,' and 'restored lands' for a 'restored tribe.'"

In February 2006, the Tribe submitted to the NIGC a site-specific gaming ordinance for the Carter Lake land but withdrew the request in August 2006. Then, on July 23, 2007, the Tribe submitted to the NIGC a new request for approval of a site-specific ordinance to use the Carter Lake land for gaming, again stating that the land was eligible for gaming under the IGRA's restored lands exception. The State of Iowa opposed the request.

On October 22, 2007, Michael Gross, Associate General Counsel for the OGC, recommended in a memorandum to Philip N. Hogen, NIGC Chairman, that Chairman Hogen disapprove the ordinance because "though the Ponca Tribe of Nebraska is itself a 'restored' tribe, the factual circumstances surrounding the acquisition of the Carter Lake land show that it was not taken into trust as part of the Tribe's restoration." In his

analysis, Gross first determined that the Carter Lake land constitutes "Indian lands" within the meaning of the IGRA, 25 U.S.C. § 2703(4)(B) but ultimately concluded that "the facts immediately surrounding the trust acquisition show that the Carter Lake land is not restored land."

In reaching his conclusion, Gross noted that the Tribe "did not contemplate a gaming use for the land when it applied to have the land taken into trust." He also cited the Tribe's representation to the Regional Director that the land would not be used for gaming. Then, he discussed the purported agreement that the State of Iowa and the Tribe entered into, as evidenced by the Corrected Notice, that the Tribe would not use the land for gaming, concluding that "[e]very government involved in the acquisition regarded the Carter Lake land as land that was not restored within the meaning of 25 U.S.C. § 2719(b)(1)(B)(iii), a characterization that the Tribe has not, until now, disputed."[5]

On October 22, 2007, Chairman Hogen disapproved the Tribe's tribal gaming ordinance, concluding that the Carter Lake land is not restored land. Incorporating Gross's memorandum by reference, Chairman Hogen explained that "the factual circumstances surrounding the acquisition for the Carter Lake land show that it was

---

[5]Gross rejected the Tribe's argument that such facts are irrelevant because they post-date the acquisition of the Carter Land. As to the purported agreement between the State of Iowa and the Tribe, Gross opined that "the NIGC Chairman need take no position on whether the notice was a binding settlement agreement between the Tribe and the State of Iowa" because the relevant question was whether the Carter Lake land is "restored land" under the facts surrounding the acquisition, not "whether the notice, or any alleged agreement based upon it, is legally enforceable or whether there is a legally binding document restricting the use of the Carter Lake land in such a way as that the land must perforce cease to be restored lands under IGRA."

not taken into trust as part of the Tribe's restoration." The DOI concurred in the conclusion that Carter Lake land is not restored land.[6]

The Tribe appealed to the full NIGC Commission ("the Commission") pursuant to 25 C.F.R. § 524.1. The State of Iowa was permitted to submit a written response in support of Chairman Hogen's decision pursuant to 25 C.F.R. § 524.2. On December 31, 2007, the Commission reversed Chairman Hogen's decision, holding that the Carter Lake land qualified as "restored lands." Specifically, the Commission found that "(a) [t]he Chairman's disapproval improperly relied on the Tribe's intended use of the land; (b) [t]he Chairman's disapproval improperly relied on events that occurred after the [DOI] final agency decision was made; and (c) [t]he factual circumstances of the acquisition weigh in favor of restoration."

As to the Tribe's intended use of the land, the Commission found that Chairman Hogen's reliance on the Tribe's representations that it intended to use the land for a health care facility was erroneous because prior agency decisions provide that "intended use at the time of the trust acquisition has no place in a restored lands analysis." According to the Commission, "[t]he question of whether lands are restored is, in fact, quite distinct from the question of whether a tribe intends to conduct gaming on those particular lands" because "the focus of the analysis is whether the land was acquired as part of the Tribe's restoration, not on what the Tribe planned to

---

[6]Specifically, the DOI advised the NIGC as follows:

> We have reviewed and provided you with comments on the draft memorandum from your office that the Carter Lake site of the Ponca Tribe of Nebraska does not qualify as restored lands for a restored tribe within the meaning of 25 U.S.C. § 2719(b)(1)(B)(iii). We concur in the draft dated 10/22/07, a copy of which is enclosed.

Both Chairman Hogen's decision and Gross's memorandum are dated October 22, 2007.

-9-

do with the land at the time." The Commission also explained that "[m]ost restored lands determinations are made through the DOI's trust acquisition process in cases where a tribe has expressed intent to game" but that in some cases, such as the present one, the determination is made "where tribes acquire trust land for another purpose, and later, often within only a few years, receive a positive restored lands determination so that they may conduct gaming."

The Commission next addressed events that post-dated the Regional Director's decision taking the Carter Lake land into trust. The Commission found that "[w]hether the lands are taken into trust as part of a restoration of lands necessarily depends on the facts present at the time of the acquisition, or, more precisely, the facts present when the decision to acquire the land was made." As a result, "[a]ny facts which were not present at the time of the decision are not part of the trust acquisition, and, therefore, are not properly considered." According to the Commission, the determination to take the Carter Lake land into trust was made upon the IBIA's decision, meaning that "events that occurred after that were not considered as part of the trust decision." Therefore, the Corrected Notice, expressing the purported agreement between the State of Iowa and the Tribe, was not part of the trust decision, as its purpose was to "advise the public that a land to trust decision has been made so that affected parties may sue in federal court to prevent the trust acquisition before the land is formally acquired because the Quiet Title Act precludes judicial review after the United States acquires title." Because the Commission found that the Tribe's "expressed intentions and reliance thereon are not relevant because they occurred after the DOI final decision," it declined to "reach the question of whether the subjective intent of a tribe and reliance thereon are proper factual circumstances to be considered in a restored lands analysis" or whether the agreement between the Tribe and the State was enforceable.

Finally, the Commission found that the factual circumstances, in addition to the location and temporal factors, supported a finding that the Carter Lake land is restored

-10-

land because "the Carter Lake land is among the first trust acquisitions of the Tribe . . . ." But the Commission expressed its dismay at "the inequities worked in this case," referring to the Tribe's concession to the State of Iowa in which the Tribe "led the State down the primrose path with promises it never intended to keep." Nevertheless, the Commission concluded that

> the law here prevents us from granting either a remedy to the State or imposing a consequence on the Tribe. Without a consequence for those who so boldly promise whatever suits them, we are concerned by the tarnish the Ponca's actions may leave on the credibility and good faith of other tribes that attempt to have land taken into trust.

The Commission's final decision was entered without further consultation with the DOI.

The States appealed the Commission's decision to the district court, seeking a declaratory judgment that "(1) the NIGC lacked jurisdiction to make a restored lands determination necessary to allow gaming; (2) the NIGC decision was arbitrary and capricious in lacking a fact-based well-reasoned analysis; and (3) the NIGC decision was contrary to the 1990 Ponca Restoration Act."

The district court declined to decide whether the NIGC's decision was contrary to the PRA because "[t]he DOI or BIA should be the agency initially deciding whether the Ponca Tribe's Carter Lake, Iowa acquisition went beyond what Congress intended in seeking to limit to Knox and Boyd Counties, Nebraska, real property transferred to the Secretary for the benefit of the Tribe." The court specifically noted that "[n]either the defendants in their briefs nor the NIGC Decision adequately addressed that question of statutory intent."

The court then agreed that the NIGC lacked the authority to declare the Carter Lake land "restored lands" "based on the circumstances of the 2003 conveyance in

-11-

trust that followed the deal the Tribe's Chief made with the State of Iowa, with the concurrence of counsel for the DOI." According to the court, DOI personnel, not the NIGC, approved the public notice disclaiming gaming on the land. The court rejected the DOI and NIGC's argument that a Memorandum of Agreement (MOA) gave the NIGC the authority to make an independent restored lands analysis "that went beyond the decision made by the [DOI], even though the DOI approved the legal opinion recommending the denial of the gaming ord[i]nance and notice to the public reflecting the Iowa-Ponca Tribe agreement." According to the court, the MOA did not give the NIGC authority to override DOI decisions or explicit authority to make restored lands decisions. As a result, "[t]he NIGC should have deferred to BIA and DOI to decide whether to transform the Carter Lake parcel into restored lands."

The court also rejected the argument that several decisions of other federal district courts supported the NIGC's authority to issue restored lands opinions because

> none of the cases defendants and the Ponca Tribe cite involve the unique circumstances in this case: a BIA and DOI decision and public notice supporting the parties' agreement that a parcel is not restored land eligible for gaming, followed by a Tribe's attempt to have NIGC, not BIA or DOI, change that decision.

Finally, the court rejected the argument of the Tribe, as amicus, that the NIGC decision correctly stated that the agreement made in 2002 could not be a legally enforceable agreement "through a mere notice published in a local newspaper." The Tribe argued that the notice's sole purpose was "to give simple procedural notice," not to state the terms of the transfer. The district court found that the record as a whole demonstrated that counsel for all parties—the State of Iowa, the Tribe, and DOI/BIA—had authority to make the no-gaming decision in 2002 and approve the agreed-to published notice in 2003.

Thus, the court declared that the NIGC had no authority to override the agreed-to outcome of the IBIA proceedings that gave notice that the Carter Lake land was not eligible for gaming.

In the alternative, the court held that, even if the NIGC had the authority to make the gaming decision, the decision lacked a rational basis on the law and facts of the record and was therefore arbitrary and unlawful. Thus, the district court entered a declaratory judgment in favor of the States, reversing the NIGC's decision.

## II. *Discussion*

The DOI and NIGC brought this "limited appeal," asking this court to remand to the Commission for two limited purposes: (1) to permit the NIGC, in consultation with the DOI, to weigh the three factors that are relevant to the determination of whether the Carter Lake land is eligible for gaming under the IGRA's "restored lands" exception—temporal proximity, historical and modern connection to the location, and the factual circumstances of the trust acquisition, *including the Tribe's purported agreement with the State of Iowa as memorialized in the Corrected Notice* and (2) to permit the NIGC, in consultation with the DOI, to determine whether the PRA limits restored lands status to parcels taken into trust in Boyd and Knox Counties, Nebraska.

First, the DOI and NIGC argue that the district court erroneously held that the NIGC had no "authority" to decide that the Carter Lake land is eligible for gaming. They contend that the district court did not decide the scope of the NIGC's jurisdiction as a general proposition but instead only concluded that in the "unique circumstances in this case" the NIGC could not disregard the purported agreement between the State of Iowa and the Tribe as published by the DOI. According to the DOI and NIGC, the NIGC, on remand, would consider the agreement in consultation with the DOI. Second, the DOI and NIGC contend that the district court should have remanded the case to the agency for further proceedings to consider all relevant factors once it

-13-

concluded the Commission improperly disregarded the purported agreement between the State of Iowa and the Tribe as expressed in the Corrected Notice.

In response, the States assert that this court should affirm the district court's reversal of the NIGC's decision without remand because (1) the district court properly held that the NIGC lacks authority to alter the basis on which the DOI took the parcel into trust, as nothing in the IGRA grants the NIGC the authority to render unilateral "restored lands" determinations or issue a unilateral decision to override the DOI's prior determination, as expressed in the Corrected Notice and (2) in the alternative, the unambiguous terms of the PRA provide that restored lands for the Tribe must be located in Knox and Boyd Counties, Nebraska, not in Carter Lake, Iowa.

The Tribe, as amicus, argues that this case is about the unauthorized inclusion of unexamined language in a newspaper notice and whether the law compelled a federal agency to give dispositive legal effect to that mistake. According to the Tribe, established principles of administrative law and the long-established rule that governments—federal, state, and tribal—are not bound in perpetuity by the unauthorized acts of their agents support a finding that a federal agency is not compelled to give dispositive legal effect to such a mistake. The Tribe maintains that an unauthorized "statement" of legal opinion cannot override fundamental and settled principles of statutory construction, which demonstrate that the parcel is "restored land" under the IGRA.

> We review de novo a district court's decision whether an agency's action violates the [Administrative Procedure Act (APA)]. Under the APA, our review of an agency decision is limited. After a searching and careful review of the record, we may set aside the [NIGC's] action if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

-14-

*Thomas v. Jackson*, 581 F.3d 658, 664 (8th Cir. 2009) (internal quotations and citations omitted).

A. *"Restored Lands" Determination*

The ultimate issue in this case is whether the NIGC's decision that the Carter Lake land constitutes "restored lands" under 25 U.S.C. § 2719(b)(1)(B)(iii) is arbitrary, capricious, an abuse of discretion, or not in accordance with the law. But the DOI and NIGC have further narrowed the appeal by expressly declining to contest the district court's holding that the NIGC Commission improperly excluded from consideration the purported agreement between the Tribe and State of Iowa as set forth in the Corrected Notice. According to the DOI and NIGC, such a holding does not resolve the issue of whether the Carter Lake land is eligible for gaming under the IGRA's restored lands exception because the NIGC, in consultation with the DOI, must determine what legal effect and weight to give the purported agreement and Corrected Notice.

Under the IGRA, an Indian tribe is permitted to engage in gaming on "Indian lands" under certain circumstances. 25 U.S.C. § 2710(b)(1); *see also* 25 U.S.C. § 2710(d)(1) ("Class III gaming activities shall be lawful on Indian lands only . . . ."). Generally, "Indian lands" are those within any Indian reservation and lands whose title is held in trust by the United States for the benefit of any Indian tribe. 25 U.S.C. § 2703(4); *see also* 25 C.F.R. § 502.12.

Here, none of the parties dispute that Carter Lake is trust land and therefore meets the definition of "Indian land." But Carter Lake qualifying as "Indian land" does not end the analysis, as 25 U.S.C. § 2719 prohibits gaming "on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988" unless an exception to the general prohibition applies. All parties agree that the Carter Lake land was acquired after this date; therefore, gaming is prohibited on the Carter Lake land unless an exception applies.

In the administrative proceeding before the NIGC, the Tribe asserted that the restored lands exception of § 2719(b)(1)(B)(iii) applied. Under the exception, the general gaming prohibition does not apply when "lands are taken into trust as part of . . . the restoration of lands for an Indian tribe that is restored to Federal recognition." 25 U.S.C. § 2719(b)(1)(B)(iii). The States concede that the Tribe's status is one "restored to Federal recognition." But, the States contest whether Carter Lake was taken in trust as part of the Tribe's restoration.

Previous cases have rejected the argument that § 2719 requires that "Congress have taken action to restore the land." *Grand Traverse Band of Ottawa & Chippewa Indians v. U.S. Attorney for the W. Dist. of Mich.*, 198 F. Supp. 2d 920, 935–36 (W.D. Mich. 2002), *aff'd*, 369 F.3d 960 (6th Cir. 2004) ("*Grand Traverse II*"). Instead, these courts have articulated a three-factor test to determine whether a parcel was taken into trust as part of the restoration of land to a tribe; under this test, "land that could be considered part of such restoration might appropriately be limited by the factual circumstances of the acquisition, the location of the acquisition, or the temporal relationship of the acquisition to the tribal restoration." *See id.* at 935; *see also Grand Traverse Band of Ottawa & Chippewa Indians v. U.S. Attorney*, 46 F. Supp. 2d 689, 700 (W.D. Mich. 1999) ("*Grand Traverse I*"); *Confederated Tribes of Coos, Lower Umpqua & Siuslaw Indians v. Babbitt*, 116 F. Supp. 2d 155, 164 (D.D.C. 2000) (concurring with the analysis as set forth in *Grand Traverse I*).

Prior to the NIGC's decision, the DOI did not determine whether the Carter Lake land constituted "restored lands" because the Tribe proposed a non-gaming use. Consequently, the Regional Director evaluated whether to take the land into trust under the IRA, 25 U.S.C. § 465. If the Tribe had proposed a gaming use when it requested that the land be taken into trust, then the Assistant Secretary–Indian Affairs would have evaluated the request and made a determination as to whether the land constituted "restored lands." *See Checklist for Gaming Acquisitions, Gaming-Related Acquisitions, and IGRA Section 20 Determinations*, Sept. 2007, at 1.

-16-

The district court construed the Corrected Notice as a "restored lands" determination by the DOI. We disagree and hold that the district court erred in concluding the DOI has already made a "restored lands" determination. The purpose of the notice was not to analyze the facts and law to determine whether the Carter Lake land was eligible for the restored lands exception but was instead to inform the public "that a final agency determination to take land into trust has been made and that the Secretary shall acquire title in the name of the United States no sooner than 30 days after the notice is published." 25 C.F.R. § 151.12(b). Thus, the notice's purpose was to "allow[ ] interested parties to seek judicial review or other review under the Administrative Procedure Act and applicable regulations" before the land was taken into trust. 61 Fed. Reg. 18082. The eligibility of the land for restored lands status was not resolved.

The district court reversed the NIGC based, in part, on its finding that the NIGC lacked authority to make the restored lands determination. At this time, we need not divine whether the DOI or NIGC possess the authority to make such a determination. *See* Dennis J. Whittlesey, *Washington's Newest Battle: Indian Gaming v. Indian Gaming*, 12 Gaming L. Rev. & Econ. 408, 408 (2008) (discussing the ongoing dispute between the DOI and NIGC as to which agency has the "legal right to determine whether newly acquired land can be used by Indian tribes for casino development"). In their brief and at oral argument, the NIGC and DOI aver that, upon remand, the NIGC would not issue a "restored lands" opinion without obtaining the concurrence of the DOI.[7]

---

[7]The DOI and NIGC's representation to this court is based on a 2009 Memorandum of Agreement ("2009 MOA") entered into between the DOI and NIGC. According to the DOI and NIGC, the NIGC Office of General Counsel (OGC) would prepare the legal opinion evaluating whether the Carter Lake land constitutes "restored lands." Then, pursuant to the 2009 MOA, the OGC would consult with the DOI in preparing its legal opinion. The legal opinions of the DOI and OGC would then be submitted to the Commission for its decision of the Tribe's administrative appeal. Under ¶ 8 of the 2009 MOA, these opinions would become part of the records

-17-

Thus, the only remaining question is whether a remand is necessary in light of the DOI and NIGC's concession that the NIGC improperly excluded from consideration the purported agreement between the Tribe and the State of Iowa referenced in the Corrected Notice. We hold that the absence of a determination on the record as to the validity of the agreement entered into between the State of Iowa and the Tribe necessitates remand. *See, e.g.*, *Mayo v. Ashcroft*, 317 F.3d 867, 874 (8th Cir. 2003) (explaining that the "ordinary remand rule" means that "a court of appeals, except in rare circumstances, should remand a case to an agency for decision of a matter that statutes place primarily in agency hands") (internal quotations and citation omitted); *Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20 (1952) ("[T]he guiding principle" in cases such as this "is that the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the [agency] for reconsideration."); *Negusie v. Holder*, 129 S. Ct. 1159, 1168 (2009) (holding that, under ordinary remand rule, Board of Immigration Appeals's legal error, consisting of finding as to presence of coercion exception in Immigration and Nationality Act's ambiguous "persecutor bar" based on application of inapplicable statute, called for remand for Board of Immigration Appeals to make initial determination of INA provision without the legal error, rather than Supreme Court providing answer); *Gonzales v. Thomas*, 547 U.S. 183 (2006) (holding that the proper course for a court of appeals, after reversing a decision of the Board of Immigration Appeals concerning alien's eligibility for asylum, except in rare circumstances, is to remand to the Board of Immigration Appeals for additional investigation or explanation).

The district court found that the record as a whole demonstrated that counsel for all parties—the State of Iowa, the Tribe, and the DOI—agreed that no gaming would occur on the Carter Lake land. However, whether the Corrected Notice is binding upon the tribes was neither raised by the parties nor discussed by the NIGC

considered by the Commission.

or the district court. We consider the record inadequate to make a conclusive determination as to the Corrected Notice's validity as an agreement and its legal effect.[8]

If the NIGC concludes that no valid agreement exists estopping the Tribe from raising the "restored lands" exception,[9] then it may proceed to reexamine whether the Carter Lake land is eligible for gaming under the IGRA's "restored lands" exception. *See Grand Traverse II*, 198 F. Supp. 2d 920 at 935.[10]

---

[8]We note that the Tribe filed suit on December 5, 2008, in the United States District Court for the District of Columbia asserting that the Regional Director's inclusion of its tribal attorney's requested language in the Corrected Notice was unlawful and seeks declaratory and injunctive relief. *Ponca Tribe of Nebraska v. U.S. Dep't of the Interior, et al.*, Case 1:08-cv-02110-RMU (D.D.C.). That case has been stayed pending resolution of this case.

[9]*C.f. Katun Corp. v.* Clarke, 484 F.3d 972, 976 (8th Cir. 2007) (citing *Hoyt v. Wickham*, 25 F.2d 777, 781 (8th Cir. 1928) ("The defendant [in *Hoyt*] was therefore estopped by the settlement agreement from challenging the contract's legality."); *Southwestern Bell Tele. Co. v. N.L.R.B.*, 667 F.2d 470, 476 (5th Cir. 1982) ("We hold that the settlement agreement waived the union's right to information that is relevant and necessary to its bargaining function and that the Board, bound by the settlement agreement, is estopped from prosecuting any alleged violation of that right."). In making this determination, the NIGC should consider the Tribe's contention that it is not bound by the allegedly unauthorized acts of its attorney.

[10]Because the record is insufficient for us to determine the validity of the agreement between the State of Iowa and the Tribe, we decline to address the Tribe's argument that the language appended to the Corrected Notice was an unauthorized legal opinion and not a binding agreement. Moreover, we will not address the Tribe's argument that the agreement and Corrected Notice are irrelevant because they post-date the IBIA's decision because the DOI and NIGC have not raised the issue on appeal. *Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 827 n.6 (8th Cir. 2009) ("However, we decline to consider this issue because it was raised to this court by the amici and not by the parties."); *see also United States v. United Foods, Inc.*, 533 U.S. 405, 417 (2001) ("Just this Term we declined an invitation by an amicus to entertain

## B. *Ponca Restoration Act*

But the States argue that a remand is unnecessary because the unambiguous terms of the PRA provide that restored lands for the Tribe must be located in Knox and Boyd Counties, Nebraska, not in Carter Lake, Iowa. They assert that the statute plainly and unambiguously references Knox and Boyd Counties as the areas where the DOI must accept up to 1500 acres into trust as "restored lands." According to the States, the PRA's legislative history makes this limitation evident, as it reveals that Congress intended to impose a geographic limitation to these two counties and that the limitation was added at the request of the DOI itself. The States also point to a DOI regulation stating how restoration acts are to be interpreted; in that regulation, the agency makes clear that when a restoration act specifies the geographic area for restored lands, as the PRA does, a tract must be within the specified area to qualify. *See* 25 C.F.R. § 292.11. Therefore, the States maintain that even if the NIGC had authority to alter the basis on which the parcel was taken into trust, the land cannot qualify as "restored lands" as a matter of law because it lies outside of the two-county area stipulated by Congress at the time it enacted the PRA.

In response, the DOI and NIGC note that the States sought review of the NIGC's decision under the APA, 5 U.S.C. § 702 and that no reviewable agency decision exists resolving whether the PRA limits the land that may be considered "restored" for purposes of the IGRA. According to the DOI and NIGC, review of administrative agencies is unique, and this court should permit the DOI to decide in

new arguments to overturn a judgment, *see Lopez v. Davis*, 531 U.S. 230, 244, n. 6, 121 S. Ct. 714, 148 L. Ed.2d 635 . . .  (2001), and we consider it the better course to decline a party's suggestion for doing so in this case."); *Davis v. United States*, 512 U.S. 452, 457 n. * (1994) ("Although we will consider arguments raised only in an *amicus* brief, we are reluctant to do so when the issue is one of first impression . . . .") (citation omitted); *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 60 n.2 (1981) ("We decline to consider [the argument raised by the amici] since it was not raised by either of the parties here or below."); *Peltier v. Henman*, 997 F.2d 461, 475 (8th Cir. 1993) (same).

the first instance whether the PRA limits "restored land" status under the IGRA to Boyd and Knox Counties, Nebraska. This is particularly so because that decision will determine the eligibility of gaming of all land that may be taken into trust for the Tribe outside of these two counties, not just the five-acre parcel at issue in this case.

Our review of the administrative record shows that there is no agency decision resolving whether the PRA limits the land that may be considered "restored" for purposes of the IGRA. In its order, the district court declined to consider the issue, concluding that the DOI or BIA should initially decide whether the acquisition went beyond Congress's intent.

We agree with the district court that the DOI should make the initial determination of whether the PRA limits the Tribe's "restored lands" to two counties in Nebraska because, while we may normally affirm the judgment of the district court "on any basis disclosed in the record, whether or not the district court agreed with or even addressed that ground . . . [j]udicial review of administrative agencies is approached differently." *Palavra v. I.N.S.*, 287 F.3d 690, 693 (8th Cir. 2002). The government represents that NIGC must have the *concurrence* of DOI to issue a restored lands opinion and that a remand to the NIGC will necessarily result in DOI addressing the PRA before any lands are declared "restored." We take the government at its word.

## III. *Conclusion*

Accordingly, we remand this case to the district court with instructions to remand to the NIGC for reconsideration of its restored lands analysis in accordance with this opinion.

KORNMANN, District Judge, dissenting.

The majority opinion comprehensively and correctly sets out the history of this case. I have only one disagreement. I do not agree that we should give the federal government in this case yet another chance to "get it right." The government has had quite enough chances to do that. I disagree with the conclusion that a remand is necessary. I believe we should affirm the action of the trial court, although based on some conclusions somewhat different from those of the district court. We are, of course, permitted to do that. The district court was correct in deciding that the decision of the National Indian Gaming Commission ("NIGC") lacked a rational basis on the law and the facts of the record and was therefore arbitrary and unlawful.

The bottom line, in my opinion, is that the failure of the NIGC to consider and apply the express clear language of the Ponca Restoration Act ("PRA") was a decision that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This same point, i.e. that the PRA expressly prohibits any government agency from taking land into trust for gambling purposes outside of Boyd and Knox Counties in the State of Nebraska, was urged upon the NIGC by the appellees. The appellees have taken the same position before the district court and now before us.

The Court of Appeals reviews *de novo* a district court's decision on an appeal from an agency decision. *Thomas v. Jackson*, 581 F.3d 658, 664 (8th Cir. 2009). We may set aside an agency's decision under the circumstances described above. 5 U.S.C. § 706(2)(A). As stated, those circumstances exist here.

The result in this case is dependent upon a correct interpretation of the Indian Gaming Regulatory Act ("IGRA") and the PRA. The United States Supreme Court long ago set forth the standard of review of an agency's final decision construing a statute.

-22-

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S. Ct. 2778, 2781–82, 81 L. Ed.2d 694 (1984).

"The plain meaning of a statute controls, if there is one, regardless of an agency's interpretation." *St. Marys Hosp. of Rochester, Minnesota v. Leavitt*, 535 F.3d 802, 806 (8th Cir. 2008) (*quoting Horras v. Leavitt*, 495 F.3d 894, 900 (8th Cir. 2007) and *Hennepin County Med. Ctr. v. Shalala*, 81 F.3d 743, 748 (8th Cir.1996)).

The appellants urge a reversal of the district court or, at the very least, a remand to the district court and then to the NIGC. There is no need to remand this matter. Pursuant to the Ponca Restoration Act of October 31, 1990:

The Secretary shall accept not more than 1,500 acres of any real property located in **Knox or Boyd Counties, Nebraska**, that is transferred to the Secretary for the benefit of the Tribe. Such real property shall be accepted by the Secretary (subject to any rights, liens, or taxes that exist prior to the date of such transfer) in the name of the United States in trust for the benefit of the Tribe and shall be exempt from all taxes imposed by the Federal Government or any State or local government after such transfer. The Secretary may accept any additional acreage in **Knox or**

> **Boyd Counties** pursuant to his authority under the Act of June 18, 1934
> (25 U.S.C. 461 *et seq.*) (emphasis supplied).

25 U.S.C. § 983b(c).

While the Secretary may, pursuant to the Indian Reorganization Act, 25 U.S.C. § 465, take any land into trust for the benefit of an Indian tribe, such land so taken cannot qualify for the "restored lands" exception to the general prohibition of gaming on trust lands. Land taken into trust pursuant to the Ponca Tribe's restoration, and upon which gaming is authorized, can only be trust lands in Knox or Boyd Counties in Nebraska. The Carter Lake parcel in Iowa cannot qualify as "restored lands."

This result is consistent with the legislative history of the PRA. The Senate version of the Act's restoration of rights sections did not contain language limiting trust status to any particular property. The Senate version of Section 4(c) of the Act provided, in part:

> The Secretary shall accept any real property that is transferred to the
> Secretary for the benefit of the Tribe.

*See* 136 Cong. Rec. S10012-01, S10014, 1990 WL 99607. The Committee on Interior and Insular Affairs of the House of Representatives suggested an amendment to Section 4(c) to provide:

> The Secretary shall accept not more than 1,500 acres of any real property
> located in Knox or Boyd Counties, Nebraska, that is transferred to the
> Secretary for the benefit of the Tribe.

H.R. Rep. 101-776m 1990 WL 200495. That version was adopted by the House, 136 Cong. Rec. H9277-01, 1990 WL 152007, and that is the version that was enacted as 25 U.S.C. § 983b(c).

There is no reason to consider the so-called three factors test set forth in *Grand Traverse Band of Ottawa & Chippewa Indians v. U.S. Attorney for the W. Dist. of Mich.*, 198 F. Supp. 2d 920, 935–36 (W.D. Mich. 2002), *aff'd*. 369 F.3d 960 (6th Cir. 2004). There is no reason to consider what agreement was reached between the Tribe and the appellees, including what authority the then Tribal attorney had to enter into such an agreement and any other factual circumstances existing when the Carter Lake parcel was taken into trust. The statute is clear. We should apply it, just as the agency should have applied it.

The appellants ask us to not address one of the issues presented on appeal because the NIGC agreed in the government's brief and at oral argument that, upon remand, the NIGC would not issue a restored lands opinion without the concurrence of the Department of the Interior ("DOI"). We should reject such argument which is simply an attempt by the federal defendants to limit the scope of appeal, limit our authority, and not allow the appellees to have one of their issues decided.

The NIGC clearly had the authority to make the decision it made. Having the authority to make a decision does not allow the agency to abuse its discretion or ignore a clear statutory directive. It clearly did that when it failed to consider and apply, in determining whether "restored land status" applied to the Carter Lake parcel, Congress' limitation in the PRA Act itself. The NIGC acted contrary to federal law which law is clear and not ambiguous. There was final agency action and the matter is ripe for a decision on appeal. As the majority opinion acknowledges, the NIGC held that the "Carter Lake land qualified as 'restored lands.'" Such NIGC holding was clear error.

The district court reached the correct result and should be affirmed. For the reasons stated, I respectfully dissent.

_____