In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

No. 18-1449

STOCKBRIDGE-MUNSEE COMMUNITY,

*Plaintiff-Appellant*,

*v.*

STATE OF WISCONSIN; TONY EVERS, Governor of Wisconsin; and HO-CHUNK NATION,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 17-cv-249-jdp — **James D. Peterson**, *Chief Judge*.

———————————

ARGUED SEPTEMBER 26, 2018 — DECIDED APRIL 30, 2019

———————————

Before EASTERBROOK, ROVNER, and ST. EVE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–21, establishes a framework under which tribes may conduct gambling on land held in trust for their use. Some kinds of gambling may be conducted by every tribe, in every state, without prior approval. But class III gambling, which includes slot machines and table games

such as blackjack, may be offered only in states that allow at least some non-Indian groups to conduct similar gambling, and then only if tribe and state enter into a compact or contract covering the operation. 25 U.S.C. §2710. Both a federal commission (the National Indian Gaming Commission) and the federal judiciary oversee this process. See generally *Michigan v. Bay Mills Indian Community*, 572 U.S. 782 (2014).

Since 1992 Stockbridge-Munsee Community (the Community), a federally recognized tribe, has conducted gaming at North Star Mohican Casino Resort in Shawano County, Wisconsin. In 2008 Ho-Chunk Nation (the Nation), another federally recognized tribe, opened Ho-Chunk Gaming Wittenberg in Shawano County. Both casinos feature class III gaming; both are authorized by contracts between the tribes and Wisconsin. In 2016 the Nation announced plans to add more slot machines and gaming tables, plus a restaurant, a bar, and a hotel. The Community responded with this suit under the Act, seeking an injunction against the expansion if not against the Wittenberg casino as a whole.

The Community has two legal theories. First, it contends that Ho-Chunk Gaming Wittenberg is not located on a parcel of land that was held in trust for the tribe on or before October 17, 1988, a critical date under 25 U.S.C. §2719(a). The parcel was conveyed to the Nation in 1969, but with a condition that the Nation did not satisfy and that was not lifted until 1989—too late, the Community asserts, even though the Department of the Interior declared in 1986 that the parcel is part of the Nation's trust lands. Second, the Community observes that the contract between the Nation and the State treats the Wittenberg casino as an "ancillary" gaming facility, a word that the contract defines as a place where

gambling is not the primary business. The Community insists that gambling *is* the primary business at Wittenberg and faults the State for failing to enforce this contractual limitation.

The district court did not reach the merits. Instead it first dismissed the suit as untimely with respect to the Nation, 299 F. Supp. 3d 1026 (W.D. Wis. 2017), and later did the same with respect to the State. 2018 U.S. Dist. LEXIS 17278 (W.D. Wis. Feb. 2, 2018). As the court saw things, the Community knew or easily could have learned no later than 2008, when the Wittenberg facility opened, that it was on land to which the Nation did not obtain definitive title until after October 1988. The judge also observed that, if the Nation's gaming operation was the primary business at Wittenberg, the Community knew that too as soon as the facility opened. After observing that the Act does not contain a statute of limitations, the judge concluded that the two likely possibilities—the time to sue for breach of contract in Wisconsin, Wis. Stat. §893.43, absorbed into federal law on the approach of *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991), or the time to sue under the Administrative Procedure Act, 28 U.S.C. §2401(a)—each set a six-year limit, which this suit, filed in 2017, exceeded. (A four-year period of limitations now applies to federal statutes, such as the Indian Gaming Regulatory Act, that do not have their own. 28 U.S.C. §1658. This applies to statutes adopted or substantively amended after 1990. See *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). None of the defendants contends that §1658 governs this suit.)

In this appeal the Community contends that it is not subject to any time limit, both because it is a sovereign (and

Wisconsin does not set time limits for its own suits) and be-
cause it seeks equitable relief against an ongoing violation of
law. See *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946). Wis-
consin replies that, because the dispute involves commercial
operations, the state itself would be subject to a time limit, so
tribes are equally obliged to sue promptly. And the Nation
leads with an argument that the federal court lacks subject-
matter jurisdiction. That is where we must start.

The Act provides for jurisdiction over "any cause of ac-
tion initiated by a State or Indian tribe to enjoin a class III
gaming activity located on Indian lands and conducted in
violation of any Tribal-State compact entered into under
paragraph (3) that is in effect". 25 U.S.C. §2710(d)(7)(A)(ii).
The Community invoked jurisdiction under this statute—
wrongly, the Nation insists, because the provision is limited
to gaming "on Indian lands". By contending that the Na-
tion's land was not (properly) taken into trust until after Oc-
tober 17, 1988, the Community disqualified itself from using
this grant of jurisdiction.

*Bay Mills Indian Community* holds that this grant of juris-
diction is indeed limited to disputes about gambling "on In-
dian lands". But the Nation is wrong to contend that the
Community has pleaded itself out of court. The Community
alleges—and the Nation agrees—that the Wittenberg facility
is located on land held in trust for the Nation. There is a dis-
pute about when trust status became effective—1986, as the
Department of the Interior believes; 1989, when the condi-
tion was waived; perhaps as late as 1993, when the grantor
gave the Nation a quitclaim deed. But that the parcel is *now*
part of "Indian lands" is beyond debate. There is accordingly
no problem with subject-matter jurisdiction under §2710,

and we need not consider whether 28 U.S.C. §1331 also sup-plies jurisdiction to resolve the parties' dispute, which after all arises under a federal statute. See *Bay Mills*, 572 U.S. at 787 n.2. (This footnote adds that, because §1331 provides ju-risdiction for claims under the Act, §2710(d)(7)(A)(ii) may be best thought of as a statement about when "a party has no statutory right of action." That way of understanding §2710(d)(7)(A)(ii) does not affect this appeal.)

The dispute about the use of §2710 led us to wonder, however, about a question that the parties did not address directly, but that seems essential to the Community's theo-ries: whether a tribe seeking protection from competition is within the zone of interests protected by the Act. See *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). The Act's provisions concern rights that tribes may assert against states and circumstances under which states may block gaming that tribes want to offer. But none of the Act's substantive rules seems to protect one tribe from competition by another. The Act does not say, for example, that a state must not allow more than one casino in a rural area such as Shawano County, which in the last census had a population slightly under 42,000 and is a good distance from the population centers of Milwaukee (metro area population 1.56 million) and Madison (metro area population 605,000).

*Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 947 (7th Cir. 2000), observed that "it is hard to find anything in [the Act] that suggests an affirmative right for nearby tribes to be free from economic competition." We therefore di-rected the parties to file supplemental briefs addressing whether the Community's claims are within the Act's zone of interests.

The Nation relies on *Sokaogon* for the proposition that the Act does not protect the interests of business rivals. The Community, for its part, distinguishes *Sokaogon* as involving intervention rather than a party's claims and contends that the Act as a whole protects every tribe's interest in "fair competition." This observation about *Sokaogon* is true enough but not helpful; we held that one tribe could not intervene in another's suit precisely because the Act does not protect any tribe's interest in avoiding competition from another. That is true whether the tribe that seeks to avoid competition is a plaintiff or an intervenor. And it is not possible to characterize the Act as designed to ensure "fair competition." What part of the Act says so? The Community does not tell us. To the contrary, it acknowledges that if the Nation's land was properly in trust before October 1988, and the State of Wisconsin authorized gaming there, then the Community would just have to grin and bear it.

The zone-of-interests doctrine asks whether the statute arguably protects the sort of interest a would-be plaintiff seeks to advance. See *National Credit Union Administration v. First National Bank & Trust Co.*, 522 U.S. 479, 492 (1998). The Community asserts two interests: first in enforcing the Act's limit to lands held in trust before October 17, 1988, and second in enforcing the requirement that the Nation operate an "ancillary" gambling facility at Wittenberg. Neither of these is designed for the benefit of tribes operating rival casinos. Indeed, only the first is in the Act at all, and it does not say what the Community thinks.

The Community reads §2719(a) as if it said something like "no Indian tribe may conduct gambling on any land taken into trust after October 17, 1988." But the Act actually

says: "Except as provided in subsection (b), gaming regulat-
ed by this [Act] shall not be conducted on lands acquired by
the Secretary in trust for the benefit of an Indian tribe after
October 17, 1988, unless … ." (The unless clause, and the
provisions of subsection (b), are irrelevant to the Nation's
situation.) To say that "gaming regulated by this [Act] shall
not be conducted …" is not at all to say that "gaming shall
not be conducted" on a particular parcel. It is instead to say
that the Act does not govern gaming on particular land. A
state need not negotiate with a tribe that wants to open a ca-
sino on a post-1988 parcel. But the Act does not forbid a state
from permitting gaming on that land, if the state chooses to
do so.

The Act creates three express rights of action. First, it
permits a tribe to require a state to engage in good-faith ne-
gotiations to reach a compact about gaming. Second, it per-
mits a suit by either the tribe or a state to enjoin illegal class
III gaming. Third, it permits the Secretary of the Interior to
enforce the Act's rules if a state does not negotiate in good
faith. 25 U.S.C. §2710(d)(7)(A)(i) to (iii). The Act does not en-
title anyone to prevent gambling that is altogether outside
the statutory scope, such as gambling on private land or on
land taken into trust for a tribe after October 17, 1988. In-
stead, as the Supreme Court held in *Bay Mills Indian Commu-
nity*, the status of gambling on such land depends on state
law rather than the Act. By insisting that the land under the
Nation's casino in Wittenberg was not in federal trust as of
October 17, 1988, the Community has not found a reason
why the casino must close; it has instead identified a reason
why the Act does not regulate the gambling.

To be sure, three courts of appeals read §2719(a) the way the Community does—that is, as if the words "regulated by this [Act]" did not appear. See *Nebraska ex rel. Bruning v. Department of the Interior*, 625 F.3d 501, 510 (8th Cir. 2010); *Roseville v. Norton*, 348 F.3d 1020, 1024 (D.C. Cir. 2003); *Keweenaw Bay Indian Community v. United States*, 136 F.3d 469, 474 (6th Cir. 1998). None of these decisions explains why those words may be ignored or why the statute should be read to forbid gaming on land acquired after 1988 rather than make it a subject for voluntary negotiations between a tribe and a state. And all of those decisions predate *Bay Mills*, which strongly implies, if it does not hold, that gaming not covered by the Act (because not on Indian land) is left to state law.

We need not decide whether to create a formal conflict with those circuits, because in the end this language does not matter—for recall that the Department of the Interior *in fact* took the parcel into trust for the Nation in 1986. Any claim by the Community that the Department should not have done so is subject to the six-year statute of limitations for federal administrative law and expired in 1992. Even read as the Community prefers, §2719(a) does not give a tribe the ability to forego a challenge to the Secretary's action and ask the judiciary to make an independent decision decades later about effective date of the land's trust status.

The Community's other argument is that Wisconsin has failed to enforce the contract's provision that the casino in Wittenberg be "ancillary" to the Nation's other businesses there, such as a hotel. We put the argument this way to make clear what the Community is *not* arguing. It does not contend that *the Act* requires a class III gaming facility to be "ancillary" to some other business. Indeed, the word "ancillary"

does not appear in the Act. This condition is one that the Nation and the State negotiated of their own volition. The absence of any such requirement from the statute is why the Community names Wisconsin and its Governor as defendants. It wants them to enforce the condition of the contract, even though it does not stem from any statutory requirement. The fact that the "ancillary business" clause in the contract is extra-statutory makes it hard to see how the Community can be asserting a right within the statutory zone of interests.

Hard but not impossible. The Community insists that the Act gives every tribe the right to compel each state to enforce all contracts negotiated with every other tribe. We asked at oral argument if this is in the nature of a claim that the Community is a third-party beneficiary of the contract between the Nation and the State; the Community's lawyer disclaimed any argument of that kind and insisted, instead, that the Act itself requires states to enforce all deals struck with all tribes. We have searched the Act in vain for such a requirement.

Certainly Wisconsin is entitled to enforce its contracts. 25 U.S.C. §2710(d)(7)(A)(ii). (The sovereign-immunity ruling in *Seminole Tribe v. Florida*, 517 U.S. 44 (1996), does not matter here because the Nation waived its immunity vis-à-vis the State as part of the contract.) But an entitlement to enforce a contract is not a command to do so—let alone a command to enforce contracts as rival tribes read them, rather than as the parties to the contract read them. Both the Nation and the State believe that the casino in Wittenberg complies with their compact. Why, then, would the State sue the Nation?

And how could the Community benefit, given the fact that the Nation and the State are free (as far as the Act is concerned) to delete the "ancillary" language from the portions of the compact that bear on the Wittenberg casino? The Community accordingly lacks any *federal* rights under the State's contract with the Nation, and it has foresworn any rights under state third-party-beneficiary law. It is not within the Act's protected zone of interests, to the extent it wants the Nation's casino closed or shrunk.

Several pages ago we described the Nation's and the Community's answers to our briefing order: the Nation insists that rival tribes never come within the Act's zone of interests, while the Community insists that they always do. The State of Wisconsin gave a different answer: it depends on the theory of relief. The State contended, as we have just held, that one tribe's demand to close or fetter a casino operated by another tribe is not within the Act's zone of interests. But Wisconsin concedes that tribes are entitled to enforce their own compacts with the states and observes that the Community's complaint sought relief based on its own agreement. The compact between Wisconsin and the Community requires the Community to pay the State a portion of its gaming revenue. This implies some protection from competition, the Community maintains, lest revenue sharing be a form of taxation that the Act does not authorize.

One problem with this theory of relief is that the Act does not authorize a tribe to sue the state to enforce a contract that had been negotiated under the Act. One court of appeals has created an extra-statutory private right of action to enforce a contract, see *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1055–56 (9th Cir. 1997), on the theory that if the

Act requires contracts to be negotiated in good faith, then they *must* be enforceable in federal court. We are skeptical about that approach, which boils down to the assertion that every federal right must have a private remedy in federal court. The Supreme Court abandoned that view in the 1970s and today holds that, when a federal statute creates specific private rights of action, the judiciary cannot add others. See, e.g., *Alexander v. Sandoval*, 532 U.S. 275 (2001) (discussing changes in the Court's approach to implied private rights of action). And the Ninth Circuit's premise is questionable. To say that a contract cannot be enforced in federal court is not to render it unenforceable. State courts remain open.

But we need not decide whether to follow the Ninth Circuit's approach, for the Community does not rely on it. Indeed, the Community's appellate brief all but ignores the portions of its complaint dealing with the Community–Wisconsin compact. Instead the Community advances arguments designed to show that it is not subject to a statute of limitations vis-à-vis the Nation, whether because it is a sovereign (in its relation to the Nation) or because it seeks injunctive relief. But the Community's claims under its deal with Wisconsin are contractual. The Community does not enjoy sovereign immunity in litigating against Wisconsin (the contract waives that status)—and the Community, as the plaintiff, cannot invoke sovereign immunity to deflect a defense. By invoking the federal courts, the Community agreed to be bound by the decision, favorable or not. More: a suit resting on the revenue-sharing features of the Community–Wisconsin contract would lead to money damages, not an injunction against the Nation's casino. We cannot see a good reason why Wisconsin's six-year period of limitations in contract law should not apply to suits based on this con-

tract—and it does not matter whether the time limit applies because Wisconsin's law is incorporated into federal law, after the fashion of *Lampf*, or because Wisconsin's law applies directly to a contract negotiated between the state and a resident tribe. Either way, the Community waited too long.

AFFIRMED

ROVNER, *Circuit Judge*, concurring in the judgment. The opinion includes a discussion of the zone of interest and the interpretation of § 2719(a) which it acknowledges is unnecessary to the resolution of the issues before us in this case, and I do not think that we should signal a split from other circuits unless the case requires it. It is my view that it is best that we await a case in which it will actually impact the outcome. Accordingly, I respectfully concur in the judgment.